# Knight et al. v. Shell

May 23, 1950.

As Modified on Denial of Rehearing

December 1, 1950.

John L. Davis, Judge.

John M. Berry and L. T. Peniston for appellants.

James F. Thomas and Julia M. Thomas for appellee.

VAN SANT, COMMISSIONER—Affirming.

Clifford Pratt owned a tract of land in Henry County consisting of a hundred acres, bordered on the east by State Highway No. 55 and on the south by State Highway No. 37. On the 13th day of May, 1946, Pratt entered into a contract with Mrs. Jennie Berry to sell her this tract, excluding therefrom a lot containing about ¾ of an acre abutting on State Highway No. 55. This lot was later sold to Hugh D. Shell on the 18th day of November, 1946, and a roadway leading from the highway to a barn on the remainder of the farm was included in the metes and bounds description. The deed was recorded in the office of the County Court Clerk of Henry County on the same day.

In negotiating with Mr. Pratt, Mrs. Berry was acting for her son-in-law and daughter, appellants, Roy and Emma Knight, and, pursuant to the contract, Pratt and his wife conveyed the one hundred acre tract, exclusive of the Shell tract, to the Knights on the 1st day of March, 1947. Shortly after the Knights moved onto the property, a controversy arose between them and Shell as to their right to use the road hereinbefore referred to, as a passway through Shell's property to Highway No. 55. Being unable to reconcile their differences, the Knights instituted this action for a mandatory injunction to require Shell to allow them and their tenants to use the road as a passway. The various deeds involved and two plats of the land were filed with the record, evidence was taken by deposition, and the cause submitted to the Special Judge for judgment. The Chancellor dismissed the petition and entered judgment for the defendant. The appeal presents but one question: viz., whether under applicable legal principles, the evidence that appellants were entitled to the permanent

use of the passway was so conclusive as to justify the court in setting aside the decree of the Chancellor to the contrary.

At the time Mr. Pratt purchased the property, a roadway was in existence between Highway 55 and a barn now owned by appellants, and was located approximately twenty feet to the south of, and parallel to, the roadway in question. Shortly after Pratt moved onto the property in the early part of 1945, he abandoned the old road and built the one in question. After their right to use the road through the Shell property was forbidden, appellants, at a cost of $116.00, constructed a new road which they have been using for the purpose of ingress and egress, and which is located approximately fifty feet south of the Shell property. They paid, or contracted to pay, $16,000.00 for the tract they purchased from Mr. Pratt. The purchase price of the smaller tract does not appear in the record. The land owned by the Knights borders Highway No. 55 for a distance of approximately one-half mile and is, at most points, level with the highway. There are at least two farm gates in the fence along Highway No. 55 which would permit passage to the farm buildings on the Knight land; and several years ago there was an entrance into the farm from Highway No. 37.

Though the contract between Pratt and Mrs. Berry mentioned the "entrance road" in controversy, the reference thereto was ambiguous and the evidence does not indicate that Mr. Shell, when he bought the lot, had any actual notice that the roadway was part of the larger tract. Appellant's contention is that an easement was created by implication and arises as an inference of the intention of the parties to convey the servitude over the land of Shell to Knight, the owner of the dominant estate. Appellants invoke the rule pronounced in various decisions of this Court, one of the latest of which is Sievers v. Flynn, 305 Ky. 325, 204 S. W. 2d 364, 366, wherein quoting from Hedges v. Stucker, 237 Ky. 351, 35 S.W.2d 539, we said: " 'The authorities are agreed, and such is the rule in this state, that where the owner of an entire tract of land, or of two or more adjoining parcels, employs a part thereof so that one derives from the other a benefit or advantage of a continuous and apparent nature, and sells the one in favor of which such continuous and apparent

quasi easement exists, such easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication.' ''

We further said: ''Thus, if created, the benefit of the servitude will pass by law as an appurtenance to the dominant estate, and the grantee of the servient estate will take the property with the burden imposed upon it. But such benefits will be conferred and burdens imposed if, but only if, the servitude is apparent and is necessary to the enjoyment of the dominant estate. * * *. And to be necessary to the enjoyment of the estate does not mean mere convenience to the dominant owner, nor on the other hand such servitude as without which the owner of the dominant estate can not use his property to any degree; but rather it means a servitude reasonably necessary to the use to which the owner has subjected, or lawfully may subject, the property. * * *''

In the American Law Institute's Restatement of the Law of Property, Volume 5, Chapter 38, Section 476, Page 2977, dealing with Servitudes, some of the factors for determining implication of easements are listed. Those listed and applicable to the facts developed in this case are (1) whether the claimant is the conveyor or the conveyee, (2) the extent of necessity of the easement to the claimant, (3) whether reciprocal benefits result to the conveyor or conveyee, (4) the manner in which the land was used prior to its conveyance, and (5) the extent to which the manner of prior use was or might have been known to the parties. It is pointed out in the Rationale of section 476, supra, that the implication probably involves a consideration of all of the listed factors which appear in the particular case, and perhaps some factors unlisted, because of their peculiarity in given instances and which commonly do not occur.

As to the first factor: Since a deed will be construed more strongly against the grantor than the grantee, all doubts will resolve in favor of the grantee against the grantor. As a consequence, circumstances which may imply an easement in favor of a grantee may not be sufficient to imply one in favor of the grantor; and since appellants, in this case, stand in the shoes of the grantor, his failure to reserve the right to the use of the passway must operate to appellants' disadvantage rather than to the disadvantage of appellee; and this is

true in the drawing of inferences as well as in the construction of the language of the conveyance itself. We will pass to the third factor and discuss the second factor later in the opinion.

Where the grantor makes simultaneous conveyances, the inference is strong that the grantor intends that privileges of use shall exist among the various grantees; and the inference would be almost as strong in favor of a single grantee against the grantor; but where, as here, the grantor or his privy by a subsequent conveyance is claiming against a grantee, the inference is weakened to such an extent that other factors, particularly reasonable necessity, must be shown with greater clarity.

There can be no doubt that the manner in which the land was used prior to its conveyance to either of the parties to this action operates to the advantage of appellants to some extent, because it is conceded that the common grantor, at will, used the roadway in question as a means of ingress and egress to and from the buildings located on the parcel purchased by appellants. But where both tracts were owned, possessed, and used by one individual previous to their conveyance, the factor of prior use will not be entitled to the weight in determining what the parties intended as it would have been had the tracts been owned and used by different persons; and, as pointed out in the Restatement, "Even where a prior use has been made, the fact of such use does not justify the implication of a corresponding easement unless some necessity for the continuance of the use exists. To the extent, however, that the prior use strengthens the implication, the degree of necessity requisite for the implication is reduced."

The fifth factor definitely is present and militates in favor of the implication. It is conceded that all the parties knew of the presence and the existence and the then present use of the roadway as a means of ingress and egress to all of the original boundary.

We now turn our attention to the second factor which, under all the authorities we have been able to find, must be present to a greater or less degree before an inference of implication may be drawn. Again quoting from the Restatement:

"In the greater number of cases, its necessity to

the use of land of the claimant is the circumstance that contributes most to the implication of an easement. If no use can be made of land conveyed or retained without the benefit of an easement, it is assumed that the parties intended the easement to be created. * * *

"* * *. If land can be used without an easement, but cannot be used without disproportionate effort and expense, an easement may still be implied in favor of either the conveyor or the conveyee on the basis of necessity alone without reference to prior use." Restatement, Property, Volume 5, Chapter 38, Section 476g, Page 2983.

The evidence shows beyond question that the roadway in dispute is not absolutely necessary to the use and enjoyment of the Knight farm, and considering the fact that it must be used jointly, if at all, with appellee, it is doubtful if it would be more convenient than the roadway recently constructed by appellants. The evidence likewise shows, as we have said, that the construction of the new road cost appellants the sum of $116.00, which certainly is not disproportionate to the value of the dominant estate as fixed in the deed; to wit, $16,000.00. In Seivers v. Flynn, supra, 305 Ky. 325, 204 S. W. 2d 364, the servitude in question was for the purpose of sewage disposal through a private sewer line into the sewer system of the City of Somerset. The users of the sewer were required by ordinance to dispose of their sewage through the city system. It was shown that they could not otherwise connect with this system without passing through other private property, and such right was one which could have been withheld by other property owners. We there held that the use of the sewer in question was reasonably necessary to the occupants of the residence situated on the dominant estate, and that fact alone was conclusive of the question.

But the circumstances of that case are not parallel with those involved herein. On the contrary, we believe there has been no showing of necessity, reasonable or otherwise in this case, and since necessity within reasonable bounds must be shown before an inference of implication may be drawn, we are of the opinion that the Chancellor correctly dismissed appellants' petition.

The judgment is affirmed.