James DOSS, Appellant,

v.

Mathis BLACKSTOCK et ux., Appellees.

No. 11814.

Court of Civil Appeals of Texas, Austin.

April 7, 1971.

Rehearing Denied April 28, 1971.

Pearce & Smith, Austin, Stayton, Maloney, Black, Hearne & Babb, Thomas Black, Austin, for appellant.

Hooper & Robinson, Karl H. Moeller, Malcolm Robinson, Austin, for appellees.

SHANNON, Justice.

Appellees, Mathis Blackstock and wife, Mary Blackstock, for themselves and other property owners in Travis Landing subdivision, sued appellant, James Doss, a developer, concerning lots 22 and 23 in that subdivision. Upon trial to the court, judgment was entered for appellees enjoining appellant from representing that lots 22 and 23 were for the use of persons other than property owners in Travis Landing subdivision, and declaring that those lots were for the sole and exclusive use of Travis Landing subdivision property owners.

We affirm.

Travis Landing subdivision was created in 1960 by developer O'Meara from 160 acres and is located on Lake Travis in Travis County. Appellees bought a lot in that subdivision in 1960 and built a $22,000.00 house.

As a sales inducement, O'Meara marked lots 22 and 23 on the plat he filed of record as "Reserved For Subdivision Property Owners." Lots 22 and 23 are lakeshore lots. Also, O'Meara caused to be distributed twenty or twenty five thousand attractive brochures describing Travis Landing as having " * * * a *private* thirty acre park complete with boat slips, picnic and play facilities and a generous measure of sandy beach perfect for even the youngest member of your family." (emphasis added) Such sales inducements are not uncommon, and the developer usually sets aside some lakefront area designating it as a park or reserve so that all purchasers will be assured of lake frontage.

His lot not having lake frontage, appellee Blackstock testified that he purchased in reliance upon the representation in the plat.

At the time of appellees' purchase, access to lots 22 and 23 was controlled by

O'Meara with a chain stretched across the entrance locked by a combination lock, the combination being furnished to subdivision property owners.

In 1966 O'Meara sold to appellant the remaining unsold 80 to 90 lots in Travis Landing, and as a part of the same transaction appellant took title to lots 22 and 23. Appellant took warranty deeds to the block of 80 to 90 lots, but he took a quitclaim deed to lots 22 and 23.

Before 1966, appellant owned a 1000 acre ranch adjoining Travis Landing, and subsequent to his purchase in Travis Landing, he created two additional subdivisions out of the 1000 acre ranch, named Travis Landing No. 2, Phase 1 and Travis Landing No. 2, Phase 2. The two new subdivisions had no lake frontage. To sell lots in the new subdivisions appellant's agents represented to prospective purchasers in the new subdivisions that they would be entitled to use lots 22 and 23 in the original Travis Landing to get to the lake, and soon numerous people from outside the original subdivision crowded onto lots 22 and 23 leaving them in an unsightly condition.

Appellees' petition alleged, in effect, dedication, estoppel and fraud. The judgment enjoined appellant from representing that lots 22 and 23 could be used by anyone other than property owners in the original subdivision, and declared that lots 22 and 23 were for the sole and exclusive use by owners in the original subdivision.

Appellant complains of the judgment by four points of error. Appellant's first point claims that the judgment could not be based on a private dedication, because there can be no private dedication in Texas. The second and third points assert that the judgment could not be grounded on estoppel or fraud because there was no evidence or alternatively there was insufficient evidence. Lastly, appellant by point four maintains that the injunction was improper because appellees had an adequate remedy at law and because the injunction

was too "broad and confusing" to be enforceable.

When findings of fact and conclusions of law have not been requested or filed, this Court should affirm the judgment if it can be sustained on any reasonable theory supported by the evidence. Bishop v. Bishop, 359 S.W.2d 869 (Tex. 1962). Accordingly, it is not necessary to consider appellant's points on dedication and fraud since we are satisfied that the judgment may be affirmed on the basis of estoppel *in pais*.

Easement by estoppel *in pais* was recognized in Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196 (Tex.1963), and the doctrine was applied in North Clear Lake Development Corp. v. Blackstock, 450 S.W.2d 678 (Tex.Civ.App.1970, error ref. n. r. e.). The elements necessary to estoppel *in pais* are (1) a representation must have been communicated to the promisee (2) it must have been believed, and (3) it must have been relied upon. Drye v. Eagle Rock Ranch, Inc., supra.

We are satisfied that this record establishes estoppel *in pais*. The plat inscription on lots 22 and 23 was a representation made by the developer to the purchasers of property in the subdivisions. The representation was communicated to appellees. In fact, Dr. Blackstock testified that he examined the plat and its inscription several times. And with respect to the last element, Dr. Blackstock testified that he bought his lot in reliance upon the plat inscription.

Appellant states with respect to reliance that appellees spent no money on lots 22 and 23, and argues that Drye, supra, requires that money be spent on the "servient" estate i. e. lots 22 and 23. We believe appellant's reading of Drye is too restrictive, and that the Supreme Court was simply illustrating one situation, among several, wherein the doctrine of estoppel *in pais* is applicable. We believe that Drye is authority that reliance may be shown

by an expenditure other than upon the "servient" estate.

Appellant insists that the plat inscription, "Reserved For Subdivision Property Owners," does not mean for the sole and exclusive use by property owners in the original subdivision. Without committing himself to a specific doctrine, appellant concedes that the owners of property in the original subdivision do have some character of right to use and enjoy lots 22 and 23, but urges that this right must be shared with owners of property in the later Travis Landing subdivisions.

We disagree. The word "reserved" means set apart for a purpose or for a person, as a part of a subdivision set apart for a community theater or a suite of rooms held for a person. Ballentines Law Dictionary, Third Edition. O'Meara set aside lots 22 and 23 as an inducement to sell non-waterfront lots in the Travis Landing subdivision. At that time there was only one Travis Landing subdivision. Originally, the access to lots 22 and 23 was controlled by a chain and a combination lock, the combination being furnished to property owners in the subdivision. Part of the value of appellees' lot is access to water frontage through lots 22 and 23. To permit use of those lots by property owners of the two new subdivisions would be to diminish the value of appellees' lot, a result contrary to the plain meaning and intent of the plat inscription.

Appellant cites no authority to support his fourth point of error, and his discussion under the point does little more than restate the point, observing that the wording of the injunction is so broad as to violate his freedom of speech under the First Amendment to the United States Constitution and Art. I, sec. 8 of the Texas Constitution, Vernon's Ann.St. We will not consider this point because it is not briefed. Tix v. Employers Casualty Company, 368 S.W.2d 105 (Tex.Civ.App.1963, error ref. n. r. e.).

The judgment is affirmed.