CLIFTON  L.  CLEVENGER,  JR. ET UX. *v.* FRITZ  R. KULLA ET UX.

[No. 842, September Term, 1973.]

*Decided August 12, 1974.*

The  cause  was  argued  before MOYLAN, MENCHINE and DAVIDSON, JJ.

*Stanley H. Hellman,* with whom were *Bayard Z. Hochberg* and *Levin, Hochberg & Chiarello* on the brief, for appellants.

*Orrin J. Brown, III,* for appellees.

MOYLAN, J., delivered the opinion of the Court.

At issue is whether the appellees, Fritz R. Kulla and wife, have an implied easement over the fifty foot wide, gravel roadway which runs along the side of their one-acre property in Howard County. The appellants, Clifton L. Clevenger and wife, own the fifty foot strip of land in question. On April 3, 1973, they began constructing a fence between their fifty foot strip of land and the Kulla property. In the Circuit Court for Howard County, Judge T. Hunt Mayfield ordered the Clevengers to remove the fence insofar as it obstructed the right of the Kullas to access to the right-of-way. Upon this appeal, the Clevengers contend:

(1) That the lower court was clearly wrong in ruling that the Kullas have an easement extending the full length of their property; and

(2) That the lower court was clearly wrong in ordering them to remove the entire fence along the common boundary between their property and that of the Kullas.

Prior to May 15, 1952, a large tract of land near Fulton in Howard County was owned by the Burdofts. This property was all on the east side of the Simpsonville Road (now known as Brown's Bridge Road, the term hereinafter to be used). Brown's Bridge Road runs along an essentially north-south axis. A fifty foot wide roadway (then unimproved) ran perpendicular to Brown's Bridge Road eastward from that road into the heart of the Burdoft property. This roadway ran on an essentially east-west axis.

On May 15, 1952, the Kullas purchased a one-acre lot from the Burdofts. The lot was rectangular in shape. Its width of 104 feet represented frontage along Brown's Bridge Road. Its depth of 405 feet extended eastward, the southern boundary being laid out along the fifty foot roadway. Mr. Burdoft had a plat prepared which showed the property that

the Kullas were purchasing. It showed the right-of-way, which Mr. Burdoft planned to improve further, adjacent to and along the entire southern boundary of the Kulla property. In the deed from the Burdofts to the Kullas, the metes and bounds description referred to the roadway. The description began, "BEGINNING FOR THE SAME at an iron pipe at the intersection of the Eastern boundary of the Simpsonville Road and the Northern boundary of a Roadway (to be laid out 50 feet wide) . . ." After tracing from that point the western, northern and eastern perimeter of the rectangular parcel, the description returned to the roadway, "and (3) South seven (07) degrees four (04) minutes thirty (30) seconds West one hundred four and ninety-six one hundredths (104.96) feet to an iron pipe in the Northern boundary of said Roadway; thence running with said Northern boundary, (4) North eighty two (82) degrees fifty five (55) minutes thirty (30) seconds West four hundred fifteen . . ." [obviously back to the starting point, although copying frailties cut off the last line (or two) from the metes and bounds description from all exhibits in the present record].

The Kullas immediately began constructing their home on the property. During the period of construction, they continuously used the roadway and have continued to use that roadway since May, 1952. They have, in the meantime, built a driveway, whereupon they park their two automobiles, off that disputed roadway. The frontage along Brown's Bridge Road has never been used for access to the Kulla property. Trees, planted during or shortly after 1952, are in the front yard of the Kulla property and separate the house from Brown's Bridge Road. There was testimony that the fifty foot wide disputed roadway has been used over the years not simply for ingress to the Kulla property but for the parking of cars of guests when the Kullas' driveway has been inadequate for that purpose.

The Kulla property is known as 7349 Brown's Bridge Road. Immediately to the north of the Kulla property was another one-acre rectangle conveyed by the Burdofts to a Mr. and Mrs. Connolly on May 2, 1952. Immediately to the

north of the Connolly property is a similar one-acre rectangular piece conveyed by the Burdofts to a Mr. and Mrs. McDonnell. The Connolly and McDonnell properties do not enter into the present dispute but do reveal the plan of the Burdofts in subdividing their large rural tract and in selling off small residential lots along Brown's Bridge Road.

On March 1, 1954, the Burdofts conveyed another portion of their property, a plot of approximately three acres, adjacent to the eastern border of the Kulla, Connolly and McDonnell properties. This plot was conveyed to Joseph C. Acton and wife and has since been conveyed to David Redmiles. This three-acre plot was within the interior of the former Burdoft tract and had no frontage on Brown's Bridge Road. The deed from the Burdofts to the Actons expressly granted a right-of-way to the Actons for access to Brown's Bridge Road "over the fifty foot strip bordering the Kulla and Acton properties" along the southern boundaries of those properties.

On January 12, 1973, the Burdofts conveyed a thirty-four-acre interior tract and the fifty foot wide strip of land in question to the present appellants, Clifton L. Clevenger and wife. That deed specifically states that the fifty foot strip is subject to the right-of-way granted to the Actons by the Burdofts.

On the morning of April 3, 1973, the Clevengers began constructing a fence along the northern border of their fifty foot strip from where that strip intersected Brown's Bridge Road eastward 405 feet to where the Kulla property ended and the Acton property began. On April 4, 1973, an ex parte injunction signed by Judge James Macgill ordered the Clevengers to remove that portion of the fence blocking the Kullas' driveway. After a full trial before Judge Mayfield, the Clevengers were required to remove the entire fence along the southern boundary of the Kulla property.

In our judgment, Judge Mayfield was correct. We hold that the Kullas had an implied easement giving them access to and use of the fifty foot roadway along their southern border. In *Knight v. Mitchell,* 154 Md. 102, the Court of Appeals discussed implied easements, saying, at 105:

"Implication of a grant of an easement in favor of one portion of a property, when ownership of the whole is severed by conveyance, arises from the intention and expectation of the grantor and grantee of that portion, to be presumed from its apparent dependence on the other; or, stating the principle in another way, after the severance the grantor is estopped to deny to the severed portion the uses and advantages of the remaining portion which have been connected with it in such a way as naturally to lead the grantee to assume that they pass with it."

The *Knight* case went on, at 106, "The implication being one of apparent expectation and intention, many facts may bear on it, tending to support it or rebut it." See also *Dalton v. Real Estate and Improvement Company*, 201 Md. 34. In *Mullan v. Hochman*, 157 Md. 213, it was held that when a grantor subdivides property shown on a plat as bordering streets he impliedly covenants that the grantee will have an easement of way over the street shown on the plat. See also *Klein v. Dove*, 205 Md. 285. In both *Moale v. Baltimore*, 5 Md. 314, and *Hall v. Baltimore*, 56 Md. 187, it was held that the purchaser has an implied grant to a right-of-way over appurtenant streets, either designated as streets in the conveyance or shown on a map by the city, even where such streets are not yet opened.

In the instant case, the prior existence of the roadway abutting the Kulla property, the plat prepared by the Burdofts showing the roadway adjacent to the Kulla property, and the reference to the roadway in the metes and bounds description in the deed to the Kullas indicate to us an implied easement to the Kullas to and over that roadway.

Having decided that there was an implied grant to the Kullas to the use of the roadway, it remains to be decided whether the entire fence should have been ordered torn down as opposed to simply that section of the fence separating the fifty foot roadway from the Kulla driveway. We are persuaded that *Evich v. Kovacevich* 204 P. 2d 839 (Washington, 1949) correctly states the applicable law. That

case held that fences that run along border lines and obstruct the dominant tenement from its use of an easement should be entirely removed. In that case, a fence was placed on the boundary line between the plaintiff's property and the property of the defendant. The easement was created by implied grant. The court said in that case, at 845:

"In this case, the right of the respondent to an unobstructed access to the walk along its entire length is fairly to be inferred from the circumstances of the case, the intention which the parties must have had in mind when the easement was created, the situation of the properties bordering upon the walk, and the purposes for which it had been used throughout the years. The right of the owner of the dominant tenement was to have access to the walk from his property at any point, not merely at some particular spot designated by a gate."

A similar situation was dealt with in *Metts v. O'Connell*, 126 A. 276 (Delaware, 1923). The defendant there put up a fence along a division line between two properties. The division line was a two foot wide alley over which the plaintiff had an easement. The court said with respect to that fence, at 279:

"Having already held under the terms of the grant that the complainant had the right of access to his property, from all adjacent points . . . , the erection of any obstruction such as a fence, on the division line between the alley and the premises of the complainant would prevent him from entering his premises at that point and would restrict him in the use of the alley and would, therefore, necessarily interfere with his full and free enjoyment of the easement granted."

In *Blanchard v. Maxson*, 80 A. 206 (Conn. 1911), the court stated, in dealing with a similar situation, at 209:

> "The fact that the fence which he took down did not wholly prevent passage up and down the lane did not save it from being an unlawful obstruction. Erected as it was, without reasonable justification or purpose, it was a nuisance abatable by him, if it materially interfered with his reasonable enjoyment of the easement, or rendered that enjoyment less beneficial or convenient than before its erection."

And cf. *Simon Distributing Corporation v. Bay Ridge Civic Association*, 207 Md. 472; *Waldschmidt v. Vito*, 228 Md. 328.

We hold that the Kullas were entitled by the implied easement to the full and unobstructed use of the adjacent roadway and that Judge Mayfield was, therefore, correct in ordering the entire fence to be torn down.

*Judgment affirmed; costs to be paid by appellants.*