**EXXON CORPORATION et al., Appellants,**

v.

**Joyce SCHUTZMAIER et vir., Appellees.**

**No. 7774.**

Court of Civil Appeals of Texas, Beaumont.

April 15, 1976.

Rehearing Denied May 13, 1976.

Louis Paine and W. John English, Jr., Houston, for appellants.

A. J. Watkins, Houston, for appellees.

KEITH, Justice.

Defendant Exxon Corporation appeals from a judgment rendered in favor of Joyce Schutzmaier and her husband which found that an easement existed across Exxon's property for the benefit of the Schutzmaiers which extended from an express easement, earlier given their predecessors in title, to a public highway.

In 1949, Thomas E. Brawner (Joyce Schutzmaier's father and predecessor in title) purchased 173 acres from V. L. Peterson. This land was adjacent to a tract of land owned by Exxon[1] which was purchased in two separate conveyances from George L. Dew in 1931 and H. W. Dew in 1932. The Exxon tract is located between Brawner's land and a public highway. It is undisputed that the sole means of access from the Brawner tract to the public highway was by means of a semicircular road which looped from the highway through Exxon's property and came within 600 feet of Brawner's tract—the road being known as Loop Road. In order to obtain a means of ingress and egress to his property, Brawner obtained from Exxon in 1950 a written easement extending for 600 feet from his property to Loop Road. Brawner

1. While Exxon Corporation was Humble Oil & Refining Company during most of the time period involved here, we will refer to this entity as "Exxon."

used Loop Road without interference for a period of 22 years, at which time he conveyed this land to his daughter and her husband, the Schutzmaiers. At no point does the Brawner tract abut on the public highway or on Loop Road, except on the latter by means of the express easement.

When the Schutzmaiers began the development of their tract in 1972, Exxon allegedly began to interfere with the accessibility to the land by tearing up a bridge on the west leg of Loop Road, constructing gates signifying the road as private property, grading and plowing the road in certain sections, and other general acts of "harassment."

The Schutzmaiers then brought this action seeking the creation of an easement along Loop Road, an injunction against Exxon from further interfering with their rights of access to their property, the dedication of Loop Road as a public highway, the restoration of Loop Road to its pre-1972 condition, and damages for intentional interference and injuries resulting from the defendant's acts of harassment. Trial was to a jury which found: that defendant had not engaged in willful acts of harassment; that the plaintiffs and Brawner had relied on the use of Loop Road when the express easement was obtained in 1950; that the use of Loop Road had been apparent, continuous, and necessary to the enjoyment of the Brawner tract; that the use of Loop Road by the public was not sufficient to have implied a public dedication; and that the plaintiffs had suffered $10,000 in injuries because of defendant's acts but that defendant was not negligent. Based upon this verdict, the trial court found that an easement had been created; enjoined the defendant from further interfering with plaintiffs' rights of ingress and egress; refused to find that Loop Road was a public way or that monetary damages should be awarded; and ordered defendant to restore the entire Loop Road to its pre-1972 condition, including replacement of the bridge

which was removed. We will refer to the parties as designated in the trial court.

Defendant's first point of error is that the plaintiffs are not entitled to a judgment awarding them "an implied easement in their favor over and along Loop Road."

We note initially that the trial court did not specify whether the easement which was created was by implication or by estoppel. The parties have addressed themselves to both theories and we will thus discuss each separately.

■ In order to establish an easement by implication, it was incumbent upon the plaintiffs to prove (1) that there was originally a unity of ownership between the dominant estate [the Brawner tract] and the servient estate [the Exxon tract]; (2) that the use must have been apparent at the time of the grant to the dominant estate; (3) that the use of the easement was continuous so that the parties intended its use to pass by grant; and (4) that the easement must be reasonably necessary to the use and enjoyment of the dominant estate. See, *Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 207–208 (Tex.1962); *Bickler v. Bickler,* 403 S.W.2d 354, 357 (Tex. 1966).

■ While strict adherence to the four requirements of an implied easement has been criticized,[2] we believe that the weight of authority supports such a construction. *Westbrook v. Wright,* 477 S.W.2d 663, 665–666 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ); *Johnson v. Faulk,* 470 S.W.2d 144, 148 (Tex.Civ.App.—Tyler 1971, no writ); 4 F. Lange, Texas Practice 137, § 375 (1961); *Clevenger v. Kulla,* 22 Md. App. 448, 323 A.2d 623 (1974); *Wetmore v. Ladies of Loretto, Wheaton,* 73 Ill.App.2d 454, 220 N.E.2d 491 (1966); *Boyd v. McDonald,* 81 Nev. 642, 408 P.2d 717 (1965); *Knight v. Shell,* 313 Ky. 852, 233 S.W.2d 973 (1950); *Maioriella v. Arlotta,* 364 Pa. 557, 73 A.2d 374 (1950).

---

**2.** 3 Tiffany on Real Property 255, 257, § 781 (3d Ed. 1939 and 1976 Supp.), wherein he states that primary emphasis should be given to the parties' intention and the circumstances surrounding the transaction.

■ Defendant asserts that plaintiffs have not proven the first element above, i. e., that there was an original unity of ownership between the dominant and servient estates at the time of the grant. Since the defendant does not complain of the jury's findings which support the remaining elements of an implied easement, we will confine our discussion to this one contention. It is plaintiffs' position that unity of ownership was established because Exxon owned the land which was conveyed for the express easement.

■ Plaintiffs' position is not well taken. The property which is subject to the express easement does not concern us here. The unity of ownership which plaintiffs had to establish in order to recover under this theory was the relationship between their tract (the dominant estate) and the tract upon which they seek to impose the easement (the servient estate), which is Loop Road. While defendant's point of error does not state whether it is complaining upon a "no evidence" point or an "insufficient evidence" point, there is no evidence at all in the record which reveals that there was a common grantor as to the Brawner tract and the land upon which Loop Road is located. The only evidence is that Brawner bought his land in 1949 from V. L. Peterson and that Exxon bought its land in 1931 and 1932 from H. W. Dew and George Dew. This proof is insufficient to comply with the common ownership requirement of *Drye v. Eagle Rock Ranch, Inc.,* supra, and *Bickler v. Bickler,* supra. Because plaintiffs failed to prove all four requisite elements, we hold that no implied easement has been established.

We next examine the question of whether an easement by estoppel was created. In this context we will also discuss defendant's point of error No. 2 wherein it asserts error in the submission of special issue No. 3 which inquired whether the plaintiffs had made any improvements and expended any sums of money on the Brawner tract (dominant estate). The jury answered this issue in the affirmative.

■ In general, one who attempts to create an easement by estoppel must show that (1) a representation must have been communicated to the promisee, (2) that it must have been believed, and (3) that there must have been reliance upon such communication. *Doss v. Blackstock,* 466 S.W.2d 59, 61 (Tex.Civ.App.—Austin 1971, writ ref'd n. r. e.). But the doctrine of easement by estoppel (or estoppel *in pais* as sometimes referred to) has not been applied with the same strictness and conclusiveness as easements by implication. As has been said by the Supreme Court, "The exact nature and extent of the doctrine of estoppel in pais have not been clearly defined." *Drye v. Eagle Rock Ranch, Inc.,* supra, 364 S.W.2d at 209. In certain situations, it has thus been suggested that the cases should more properly be based upon a construction of the surrounding circumstances. *Drye v. Eagle Rock Ranch, Inc.,* supra [at 210, citing 3 Tiffany on Real Property 315, § 800 (3d Ed. 1939)].

In *North Clear Lake Development Corp. v. Blackstock,* 450 S.W.2d 678 (Tex.Civ.App. —Houston [14th Dist.] 1970, writ ref'd n. r. e.), the court, in finding an easement by estoppel, also considered the fact that improvements which had been made were permanent and substantial, that such improvements were open and obvious to the owner of the servient estate, that the servient estate had constructive notice of the activities of the dominant estate holders, and that such use and improvements had the tacit consent of the servient estate owners because there was no complaint made when the improvements were constructed.

There is no question in the case at bar that the *only* means of ingress and egress for the plaintiffs is by Loop Road. This access was used for 22 years without any apparent interference by defendant. The Brawners and plaintiffs have expended money on their property and made improvements thereon. It was found that Brawner relied upon defendant's consent in the use of Loop Road when he obtained the express easement in 1950 and that he and his successors in title have continued to rely on

this use. Until 1972 or shortly thereafter, school buses, mail delivery vehicles and other public persons used the road with full use and enjoyment. The defendant knew of plaintiffs' actions on their property and their use of the road, but there is no indication that any complaints were made until 1972. Gates were then erected across the roadway which designated the road as private, and sections were plowed up. It was then that school buses and mail trucks plus others were unable to gain access to plaintiffs' property.

Despite this evidence, it is defendant's contention that an easement by estoppel cannot be created here because there is no proof that money was spent on the *servient* estate. In support of the proposition that expenditures on the servient estate is essential to the creation of an easement by estoppel, defendant cites *Drye v. Eagle Rock Ranch, Inc.,* supra, and *Coleman v. Forister,* 514 S.W.2d 899 (Tex.1974). We do not agree with defendant's construction of these cases.

■ In *Drye,* the Supreme Court did note that estoppel in pais has been applied in cases where the seller allows the purchaser to spend sums on the servient estate and stated that in *Drye* the owners of the servient estate had not done so. The Court did not phrase this as a necessary element, but rather made it in the context of a recitation of the evidence. The Court then said: "*While estoppel cases are not limited to situations involving this type of expenditure,* this group does form a large part of the cases affixing easements appurtenant by estoppel." (364 S.W.2d at 210, emphasis supplied). It appears clear then that in using this language the Court did not intend to limit the application of the doctrine to only those situations where expenditures were made on the servient estate; it was merely recognizing that many cases did involve servient funds.

■ We do not believe that *Coleman v. Forister,* supra, precludes this construction. In reviewing the claim of whether the plaintiffs had an easement by estoppel to waterfront lots, the Supreme Court in *Coleman* states that:

"Similarly, there has been no expenditure of money on the servient tract by the lot owners *to bring the case within the usual scope of estoppel in pais* as that doctrine has developed in this Court. *Drye v. Eagle Rock Ranch, Inc., supra,* 364 S.W.2d at 210." *Coleman v. Forister,* supra (514 S.W.2d at 904, emphasis supplied).

The reference to *Drye* which we have already discussed, and the use of the term "usual" (which does not denote something which is exclusive or all encompassing, but which does recognize that exceptions or varying situations do exist) signifies that the Court was not limiting the application of the doctrine to only those circumstances in which money had been spent on the servient estate. This interpretation has also been stated as follows:

"Appellant . . . argues that Drye, supra, requires that money be spent on the 'servient' estate . . . . We believe appellant's reading of Drye is too restrictive, and that the Supreme Court was simply illustrating one situation, among several, wherein the doctrine of estoppel *in pais* is applicable. We believe that Drye is authority that reliance may be shown by an expenditure other than upon the 'servient' estate." *Doss v. Blackstock,* supra, 466 S.W.2d at 61–62.

We agree with Justice Shannon's construction in *Doss.*

■ The courts of this State have said that " 'the owner of land may create an easement by parol agreement or representation which has been so acted on by others as to create an estoppel in pais'." 4 F. Lange, Texas Practice 148, 149, § 377 (1961); *Harris v. Rabe,* 375 S.W.2d 919, 922 (Tex.Civ.App.—Waco 1964, no writ); *Johnson v. Back,* 378 S.W.2d 723, 726 (Tex.Civ.App.—Amarillo 1964, no writ). The reliance and resulting possible detriment to the plaintiffs if the easement is revoked is well established by the evidence restated above.

■ Based upon the evidence and findings as noted above, we hold that an easement by estoppel was created. Defendant's points of error Nos. 1 and 2 are overruled.

By way of its point of error No. 3 defendant complains of the trial court's action requiring it to restore all of Loop Road to its pre-1972 condition. By replacing the bridges and regrading the plowed sections on the western part of the road, the trial court's order effectively gave to the plaintiffs two means of access to their property: one by the western portion and one by the eastern portion of Loop Road.

■ A party who obtains an easement is not entitled to use all means of access to their property by way of the servient estate. "The use of such an easement is limited to those uses which are reasonably necessary and convenient and as little burdensome to the servient estate as possible, for the use of the right granted." *Bland Lake Fishing and Hunting Club v. Fisher*, 311 S.W.2d 710, 717 (Tex.Civ.App.— Beaumont 1958, no writ); *Coleman v. Forister*, supra, 514 S.W.2d at 903; see also, *Parshall v. Crabtree*, 516 S.W.2d 216, 219 (Tex.Civ.App.—San Antonio 1974, writ ref. n. r. e.).

■ There is no evidence that the use of the west part of the road is "reasonably necessary" for the plaintiffs' use of their land. Such use is nothing more than merely convenient. There was no showing that a restoration of the eastern leg of Loop Road would not furnish them with adequate means of ingress and egress. This is all that is required under the law of this State and we see no reason to extend its application beyond the scope of what has been established by present law.

The judgment of the trial court is therefore reformed to exclude from its scope any reference to the western portion of Loop Road as concerns the requirement for restoration.

Judgment of the trial court REFORMED and, as reformed, it is AFFIRMED.