**Ford McRae MEREDITH et ux, Appellants,**

v.

**Paul EDDY et ux, Appellees.**

**No. 17705.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 8, 1981.

Rehearing Denied Feb. 26, 1981.

Krist, Gunn, Weller, Neumann & Morrison, Richard Morrison, Houston, for appellants.

Taylor & Norwood, E. R. Norwood, Mike Little, Liberty, for appellees.

Before COLEMAN, C. J., and DOYLE and WALLACE, JJ.

DOYLE, Justice.

This is an appeal from a judgment awarding a forty foot easement to Paul Eddy and wife, Mildred Eddy (appellees) across land owned by Ford McRae Meredith and wife, Anna Bell Meredith, (appellants) and enjoining appellants from interfering with appellees' use of this easement.

The land involved in this dispute was originally included in a 7.84 acre tract located in Chambers County, Texas and owned by Rufus Simon, both parties' predecessor in title. The 7.84 acres is bordered on the west by Lake Anahuac and on the east by F. M. Highway 536. In 1959 Paul Eddy purchased a one acre tract included in the 7.84 acres. Paul Eddy's tract of land was surrounded on three sides by the remainder of the 7.84 acre tract and bounded on the fourth side by the lake. Access to this landlocked tract was provided by a shell road approximately seven hundred feet long extending from highway 536 to a tract of land south of appellees' tract. After purchasing this land, Eddy extended the road approximately seventy five feet to the north to his property. In 1972, appellees purchased a second one acre tract to the north, but subsequently conveyed .523 acres of this tract to Perry E. McIlvain and wife. When appellees purchased this land, their property now abutted the shell road in controversy.

In 1975 appellants purchased the remainder of the Simon land surrounding the Eddy land and the dispute began as to the use of the shell road. Appellees brought suit alleging a right to use asserted an easement by prescription; an easement by estoppel; an easement by implication; and an easement by necessity.

Trial was to the court without a jury and it found appellees were entitled to a forty foot easement based upon all four alleged theories of easement. Findings of fact and conclusions of law were filed.

Appellants assert nine points of error.

By the first point of error appellants assert the trial court erred in granting a forty foot easement described in plaintiff's fifth amended original petition because there was no evidence that said pleading was filed with the clerk of the court or the trial court judge.

Included in the record before this court is a supplemental transcript filed by appellees wherein an affidavit by a deputy clerk of Chambers County explains that the disputed petition was in fact before the court at the time of trial. She explained that the petition, rather than being stamped on the bottom of the page was stamped on the back and that when the original transcript was prepared the back of the petition was mistakenly not copied and included in said transcript. This back page is included in the supplemental transcript, showing a file date of November 9, 1979.

A pleading is filed when it is delivered to the clerk, accepted by him, and kept among the papers of the cause so that any parties to the cause may examine them. *Consolidated Furniture Company, Inc. v. Kelly,* 366 S.W.2d 922 (Tex.1963). The clerk's affidavit explains that this petition was properly filed and included in the papers of the case. Also, appellants acknowledged and answered the allegations in this petition in defendants' first amended original answer. Appellants' first point of error is overruled.

By point of error two, appellants allege the trial court erred in its conclusion of law holding that appellees acquired a forty foot easement by prescription, because there is no evidence to support an easement by prescription.

As stated in the Texas Supreme Court case of *Othen v. Rosier,* 148 Tex. 485, 226 S.W.2d 622 (1950), "An important element in the acquisition of a prescriptive easement is an adverse use of the easement." Appellee Paul Eddy's undisputed testimony in the case shows there was no adverse holding to the owner of the land, Rufus Simon. He testified that Simon told him the road was "my road into my place." He also stated that, "Me and Mr. Simon and Mrs. Hunt" used this road and that Mr. Simon gave him permission to use the road. There is no evidence of an adverse holding of this road which would give rise to a prescriptive easement as found by the trial court. Appellants' second point of error is sustained.

In the third point of error appellants assert there is no evidence, or insufficient evidence, to sustain the trial court's judgment based on easement by estoppel. Appellants also assert the trial court erred in allowing testimony from Paul Eddy regarding conversation with Rufus Simon concerning an easement.

During the trial of this cause Paul Eddy testified that "Mr. Simon told me that was my road into my place." In answer to the question if Mr. Simon gave him an easement. Eddy answered: "He told me that was my road to my property."

Appellants object to this testimony on the ground that it is hearsay and point out that hearsay testimony is not probative evidence whether objected to at the time of trial or not. *Texas Co. v. Lee,* 138 Tex. 167, 157 S.W.2d 628 (1941).

We do not hold appellee's testimony to be hearsay but rather as stated in Ray, Texas Practice, Vol. 1A. Law of Evidence § 795, (1980), this testimony is necessary where the utterance or writing is an operative fact. In the case at bar, the issues involve whether there is an easement, either by estoppel, prescription, implication or necessity. The testimony from Eddy goes directly to the issue of the existence of an easement. When testimony is offered which tends to prove a fact issue it is admissible, and its sufficiency or probative effect becomes a question for the jury to pass upon. *Hammond v. Hammond,* 43 Tex.Civ.App. 284, 94 S.W. 1067 (1906, no writ). See also *Hanover Insurance Company v. Hoch,* 469 S.W.2d 717 (Tex.Civ.App.—Corpus Christi 1971, error ref'd n. r. e.); *Edwards v. Old Settlers' Ass'n,* 166 S.W. 423 (Tex.Civ.App.—Austin 1914, error ref'd).

To prove an easement by estoppel three requirements are necessary:

1) A representation must have been communicated to the promisee, 2) that it must have been believed, and 3) that there must have been reliance upon such communication. *Drye v. Eagle Rock Ranch, Inc.,* 364

S.W.2d 196 (Tex.1962); *Exxon Corporation v. Schutzmaier*, 537 S.W.2d 282 (Tex.Civ. App.—Beaumont 1976, no writ); *Doss v. Blackstock*, 466 S.W.2d 59 (Tex.Civ.App.— Austin 1971, error ref'd n. r. e.).

■ Since we hold that the testimony of Paul Eddy is not hearsay, there is sufficient evidence to prove the first two elements necessary for easement by estoppel. Paul Eddy testified that there was a communication made to him that he believed the road was his.

Appellants argue that as to the third element necessary to prove easement by estoppel, this element means "the seller allows the purchaser to expend money on the servient tract." The Texas Supreme Court case of *Drye v. Eagle Rock Ranch, Inc.*, supra, is cited for this contention wherein the court stated:

> Similarly, there has been no expenditure of money on the servient tract by the lot owners to bring the case within the usual scope of estoppel in pais as that Doctrine has developed in this Court.

Two appellate courts have distinguished *Drye*, holding that it cannot be so narrowly construed as to require that money be expended on the servient estate in order to give rise to an easement by estoppel. These cases are well reasoned and point out limitations emanating from *Drye*.

In *Exxon Corp. v. Schutzmaier*, supra, the court commented:

> In *Drye*, the Supreme Court did note that estoppel in pais has been applied in cases where the seller allows the purchaser to spend sums on the servient estate and stated that in *Drye* the owner of the servient estate has not done so. The Court did not phrase this as a necessary element, but rather made it in the context of a recitation of the evidence. The Court then said: "While estoppel cases are not limited to situations involving this type of expenditure, this group does form a large part of the cases affixing easements appurtenant by estoppel." (364 S.W.2d 210, emphasis supplied). It appears clear then that in using this language the Court did not intend to limit

the application of the doctrine to only those situations where expenditures were made on the servient estate; it was merely recognizing that many cases did involve servient funds.

The Beaumont court concluded in its decision that money spent on the dominant estate in reliance on a communication was sufficient to give rise to an easement by estoppel.

The Austin Court of Civil Appeals also commented on the *Drye* case in *Doss v. Blackstock*, supra:

> Appellant states with respect to reliance that appellees spent no money on lots 22 and 23, and argues that *Drye*, supra, requires that money be spent on the "servient" estate i. e. lots 22 and 23. We believe appellant's reading of *Drye* is too restrictive, and that the Supreme Court was simply illustrating one situation, among several, wherein the doctrine of estoppel is pais is applicable. We believe that *Drye* is authority that reliance may be shown by an expenditure other than the "servient" estate.

In the case before this court there is some evidence of an expenditure on the servient estate by appellees who put some shell on the road and fixed the ditches. The expenditure on the dominant estate is unquestioned and the evidence is sufficient to prove reliance and detriment. Appellees extended the original road seventy five feet to their property, built their home at the end of this road and dug water wells on the land. They planned the improvements on their land based upon the roadway they received from Rufus Simon.

Finally, appellants assert that the doctrine of estoppel in pais is "a creature of equity" and is "to protect the innocent parties from fraud." We can find no evidence of fraud or misrepresentation in this case, nor do we construe the case of *Storms v. Tuck*, 579 S.W.2d 447 (Tex.1979), as adding a further element for easement by estoppel as set out in *Drye*. Appellants' point of error three is overruled.

By point of error four appellants argue that there is no evidence or insufficient evidence to support the courts' conclusion of law that appellees acquired a forty foot easement by implication.

■ To prove an easement by implication, three requirements are necessary:

1) there must be an apparent use, in existence at the time of the grant—i. e. a road into or out of the granted area, 2) the use must be continuous, and 3) the use must be necessary to the use of the dominant estate. *Drye v. Eagle Rock Ranch, Inc.,* supra.

The case at bar presents a unique situation in that the easement in question did not directly abut appellees' land until 1972. When appellees purchased this land in 1959, the road in question ended just south of appellees' property. Appellees extended this road seventy five feet to the north, which completed a direct road to their property.

In the case of *Parshall v. Crabtree,* 516 S.W.2d 216 (Tex.Civ.App.—San Antonio 1974, writ ref'd n. r. e.), the court addressed a fact situation directly in point with the present one. The court held that even though the easement did not directly abut the dominant estate owner's land, granting her an easement by necessity would give her access to a public highway and that, further, the dominant estate owner had permission from the third landowner to cross this property for the purpose of using the easement to the highway. In the present case, appellant subsequently bought the intervening property and so the easement now directly abuts his land.

■ Paul Eddy testified that he has continuously used this road since he purchased his property in 1959. Mr. Robert C. McCulley, an engineer who has surveyed this road and been familiar with it since 1959, also testified that this road existed, was forty feet wide, and has never been changed or moved. There is sufficient evidence to find the easement in question was apparent and continuously used.

Appellants then argue that there is no necessity for the use because appellees should use a new road that appellants recently built for them.

■ A finding of necessity existed at the time of the severance of the dominant and servient estates. *Hoak v. Ferguson,* 255 S.W.2d 258 (Tex.Civ.App.—Fort Worth 1953, error ref'd n. r. e.); *Zapata County v. Llanos,* 239 S.W.2d 699 (Tex.Civ.App.—San Antonio 1951, error ref'd n. r. e.). At the time that Paul Eddy purchased his land there was a unity of estates; the road in question was permanent and obvious at this time; and it was necessary for the use of appellees as a means of ingress and egress to their land. Therefore the use of this road passed with the grant of appellees' estate. Point of error four is without merit.

Appellants concede that appellees were entitled to a way of necessity into the dominant estate at the time of the severance of the two estates. However, in points of error five and six they argue that there is no longer a necessity to use the road in question.

■ Appellants point out that they purchased the land in question for a certain purpose and this purpose will be thwarted if they cannot relocate the shell road now used by appellees. While it is correct that a way of necessity arises from the exigencies of the case and ceases when the necessity terminates, *Bains v. Parker,* 143 Tex. 57, 182 S.W.2d 397 (1944); *Richter v. Hickman,* 243 S.W.2d 466 (Tex.Civ.App.—Galveston 1951, no writ); *Johnson v. Faulk,* 470 S.W.2d 144 (Tex.Civ.App.—Tyler 1971, no writ), the necessity is still present in the case before us. Appellees still need a way of ingress and egress to their land.

The question before this court is not whether a necessity exists, but whether the roadway in question can suddenly be changed after appellees have continuously used it for approximately twenty years.

■ Once the location of a way of necessity is established, its location may be changed only with the expressed or implied consent of both parties. *Carleton v. Dierks,*

203 S.W.2d 552 (Tex.Civ.App.—Austin 1947, writ ref'd n. r. e.); *Grobe v. Ottmers*, 224 S.W.2d 487 (Tex.Civ.App.—San Antonio 1949, writ ref'd n. r. e.).

 By the seventh point of error, appellants assert the trial court erred in not limiting the easement granted to appellees solely for the use and benefit of the one acre tract of land (dominant estate) and ordering that the easement not be used for the benefit of other premises owned by appellees or others.

Appellants argue that only Paul and Mildred Eddy are entitled to use this easement for the benefit of their one acre tract and that Perry E. McIlvain and his wife are not entitled to use this easement. The McIlvains purchased .523 acres from the Eddys and use this easement for ingress and egress to their property. The record shows that the McIlvains have not been made parties to this suit. Appellants have available a proper legal remedy to determine the McIlvains' right to use the easement. Point of error seven is overruled.

 Appellants assert the trial court erred in permanently enjoining appellants from interfering with appellees' use and enjoyment of the forty foot easement because there is no evidence or insufficient evidence for the trial court to find such interference and harassment by appellants.

Paul Eddy testified at the trial that appellants had erected signs across the property that prohibited his use and enjoyment of the roadway. He also testified that his "friends don't even know where I live anymore," because appellants put up a sign "Merediths" over the top of the shell road. Mr. Eddy and Mrs. McIlvain also testified as to threats from appellants to the effect that Mr. Meredith was going to blow them all off the shell road. Mr. Meredith admitted to talk of discontinuing "the use of that road if I have to drop an atomic bomb on it." On the basis of such evidence injunctive relief was proper to insure appellees' use and enjoyment of this road.

 In the ninth point of error, appellants allege the judgment in this case is void because Judge Clarence D. Cain, was disqualified when this case was tried and the judgment signed and entered. We overrule this point.

Appellants assert that Judge Cain, who heard this case was a client of appellees' counsel, E. R. Norwood, at the time of this trial, and therefore Judge Cain should have recused himself from the case. There is no evidence on this point of error before this court. Hence there is nothing for this court to review.

The judgment of the trial court is affirmed.