**Clinton E. PAYNE, Appellant,**

v.

**Marie EDMONSON, Appellee.**

No. 01–85–0614–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 22, 1986.

Rehearing Denied June 12, 1986.

Charles E. Fitch, DeLange, Hudspeth, Pitman & Katz, Houston, for appellant.

Richard Morrison, Krist, Gunn, Weller, Neumann & Morrison, Houston, for appellee.

Before SAM BASS, HOYT and COHEN, JJ.

## OPINION

COHEN, Justice.

Payne sued for damages and an injunction prohibiting Edmonson from interfering with his use of her land. He claimed an easement by estoppel and an implied easement appurtenant. Edmonson counterclaimed, alleging trespass. The jury answered special issues in Payne's favor and awarded him damages. However, the trial court rendered a judgment notwithstanding the verdict, ordering that both parties take nothing.

We conclude that Payne failed, as a matter of law, to prove an implied easement, and we affirm the judgment n.o.v. in that

respect. We hold that Payne presented some evidence of an easement by estoppel and that the court erred in granting the judgment n.o.v. in that respect. We reverse the judgment in part and remand the cause for a new trial. We do not render judgment for Payne, because the court wrongly excluded evidence favorable to Edmonson, holding that it was barred by Tex. R.Evid. 408 (offers of compromise) and 802 (hearsay).

In October 1982, Payne was searching for a place to open a restaurant. He contacted an agent at Edmonson & Associates, a real estate company, and discovered that the restaurant next door, The Texas Fish Fry, was for sale and that the owners, James and Susan Carey, were anxious to sell. Payne entered into an earnest money contract, prepared by Edmonson, with the Careys. Before this transaction could be completed, however, the lienholder foreclosed on the property. Payne then purchased the property from the lienholder with Edmonson's assistance.

The land Payne purchased (the "Payne tract") is adjacent to land owned by Edmonson (the "Edmonson tract"). Payne claimed an implied easement appurtenant to use the driveway located on the Edmonson tract between the buildings on the two tracts, and easements by estoppel to use the driveway and parking areas of the Edmonson tract.

In points of error one through six, Payne argues that the jury's answers to special issues one through four, concerning the implied easement appurtenant, were supported by evidence and that the trial court erred in disregarding those answers and granting the judgment n.o.v.

In reviewing a judgment n.o.v., the evidence must be viewed in the light most favorable to the jury findings, considering only the evidence and inferences that support those findings. The judgment will be upheld on appeal only if there is no evidence to support the jury findings. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 728 (Tex.1982). In order to uphold the trial court, the appellate court must determine that there is no more than a scintilla of evidence supporting the verdict. *See Miller v. Bock Laundry Machine Co.*, 568 S.W.2d 648, 649–50 (Tex.1978).

In order to prevail on a claim of implied easement appurtenant, four elements must be established:

(1) There must have originally been unity of ownership of the dominant and servient estate; (2) the use must have been apparent at the time of the grant; (3) the use of the easement until the time of the grant must have been continuous; and (4) the easement must be reasonably necessary to a fair and enjoyable use of the dominant estate.

*Westbrook v. Wright*, 477 S.W.2d 663, 665–66 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ). The jury found these issues for Payne in special issues one through four. Thus, if there is more than a scintilla of evidence to support each answer, the judgment n.o.v. must be reversed. *See Miller*, 568 S.W.2d at 649–50.

The first element, unity of title, is uncontested. From October 18, 1971 to August 8, 1982, the tracts were owned by Robert Chuoke. On August 8, 1972, Chuoke sold the Edmonson tract to J.T. Doke and kept the Payne tract.

The second and third elements, apparent and continuous use at the time of the grant, must be determined as of August 8, 1972, the date Chuoke severed the two tracts. *Westbrook*, 477 S.W.2d at 666; *see Bickler v. Bickler*, 403 S.W.2d 354, 357 (Tex.1966).

Robert Chuoke testified that both before and after the severance, he used the central driveway daily to gain access to parking space at the rear of his property. Chuoke testified that the driveway was apparent and that the asphalt was visible. He further testified that the driveway was located between the buildings of the two tracts and was located entirely on the Edmonson tract. This constitutes more than a scintilla of evidence that the use was apparent as of August 8, 1972.

The third element is that the use of the easement be continuous until the time of the grant. Use is continuous if "neither the grantor nor anyone for him will have to perform any act in order that the grantee may obtain the benefit of the alleged easement. Included within the concept of 'continuous' is that degree of conspicuousness and apparentness that indicates permanency." *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 208 (Tex.1962). This element was established by Chuoke's testimony that he used the driveway daily both before and after the severance and by the nature of the easement itself, in that its continued use did not depend on any action by any party.

■ The final element is that of necessity. The degree of necessity required is that of strict necessity, since this easement was reserved, rather than granted. *Mitchell v. Castellaw*, 151 Tex. 56, 246 S.W.2d 163 (1952). Necessity means that the use of the easement must be economically or physically necessary for the use of the land and not merely desirable. *Drye*, 364 S.W.2d at 208. In *Duff v. Matthews*, 311 S.W.2d 637 (Tex.1958), the court stated:

> That the way over his own land is too narrow, or that other like difficulties exist, does not alter the case; and it is *only* where there is *no* way through his own land that a grantee can claim a right over that of his grantor. It must also appear that the grantee has no other way.

*Id.* at 643 (quoting *Kripp v. Curtis*, 71 Cal. 62, 11 P. 879 (1886) (all emphasis supplied)). In *Duff*, the holding depended on the fact that there was another road on the claimant's land that provided a means of ingress and egress. *Id.* at 643.

Chuoke testified that the strip of land on the east side of the building on the Payne tract was 13½ feet wide. While he owned the tract, he considered constructing a driveway on the strip, but decided against it because of the high cost and because the driveway would have been dangerous since the proximity of the building would have caused a blind spot, and two-way traffic would have been impossible. His assessment as to the hazards of a driveway in that location was confirmed by the subsequent owners of the tract, the Careys and Payne.

■ The issue of strict necessity "is one of mixed law and fact and accordingly one for the fact finder in the ordinary case." *Mitchell*, 246 S.W.2d at 168. Here, the jury found that the use of the driveway was necessary. However, the Texas Supreme Court in *Duff* held that "the burden is on the one seeking to establish such implied reservation of a roadway to exclude, by proof, the possibility of another way of ingress and egress except the way claimed." *Duff*, 311 S.W.2d at 641. Here, there was another means of ingress and egress, although it was narrower than Payne desired. Therefore, as a matter of law, an implied easement appurtenant could not have arisen. Payne's points of error one through six are overruled.[1]

In points of error seven through 11 and 16, Payne claims error in the trial court's granting judgment n.o.v. and failing to render judgment on the jury's answers to special issues five through seven, 10 through 12, and 15 through 17, which support an easement for ingress and egress and for parking based on estoppel in pais.

■ The elements of easement by estoppel are as follows: (1) a representation communicated to, (2) believed by, and (3) relied upon by the promisee. *Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex.1979); *Exxon Corp. v. Schutzmaier*, 537 S.W.2d 282, 285 (Tex.Civ.App.—Beaumont 1976, no writ). The doctrine of easement by estop-

---

1. Edmonson also argues that no implied easement arose because after Chuoke sold the dominant tract to Doke on August 8, 1972, Chuoke used the property by express agreement. Chuoke testified that he had either an oral or written agreement (he could not remember which) with Doke to drive over the property and that he never claimed any right to use the property except by virtue of this agreement. We need not reach this argument in view of our holding.

pel is not applied with the same strictness as the doctrine of implied easement. *Exxon*, 537 S.W.2d at 285.

Payne testified that when he first inspected the property, he noticed that the driveway on the east side of the building was not in use and that the food deliveries were made at the back of the building by the central driveway. He then talked with Edmonson, who told him that the central driveway was used by both properties for garbage pick-up and food deliveries and by customers for access to the rear of the property. Payne testified that Edmonson told him that the two properties had "mutual parking" and that there would be no problem with his customers parking at her building.

Payne testified that he believed Edmonson and in reliance on these representations, he gave up the opportunity to open a restaurant at another location and entered into the earnest money contract with Carey. This constituted some evidence, more than a scintilla, of the elements of easement by estoppel.

Payne was not required to show that he maintained or agreed to maintain the easement. *See Storms*, 579 S.W.2d at 452. Expenditures by the owner of the dominant estate on the servient estate are not required in order to show reliance. *See Drye*, 364 S.W.2d at 210; *Exxon*, 537 S.W.2d at 286. Nevertheless, Payne testified that he filled in some wheel ruts on Edmonson's tract.

Edmonson also argues that Payne's pleadings and evidence failed to describe sufficiently the locations of the easements for ingress and egress and for parking. However, Edmonson did not specially except to Payne's pleadings, and thus waived any defect therein. Tex.R.Civ.P. 90. We decline to review the sufficiency of the evidence describing the location of the easement, in view of our holding granting a new trial.

Since there was more than a scintilla of evidence to show an easement by estoppel, the trial court erred in granting

the judgment n.o.v. against Payne on that cause of action. To that extent, Payne's points of error seven through 11, 15 and 16 are sustained.

In cross-point one, Edmonson claims error in the trial court's exclusion of evidence concerning a lease for easement rights that was being negotiated by the parties prior to Payne's purchase of the tract. Edmonson contends that this evidence was relevant because it tended to rebut Payne's claim that he relied on Edmonson's oral promise to give him the use of her property for parking, ingress, and egress.

Edmonson testified in her bill of exceptions that between October of 1982 and April 27, 1983, when Payne purchased the Payne tract, she talked with him several times about leasing part of her property for parking, but that Payne did not want to lease her property until he had bought the Payne tract. He said that they would "get together" as soon as he made that purchase. After he purchased the Payne tract, Payne continued to postpone discussion concerning a lease. According to Edmonson, Payne never claimed during these discussions that he already had the right to use her property and thus did not have to lease it.

Payne objected to this evidence as hearsay and as evidence of settlement negotiations. The testimony summarized above concerned only discussions that occurred before Payne purchased his tract and before this dispute arose. This leads us to conclude that it was not evidence of settlement negotiations. Tex.R.Evid. 408. Furthermore, the testimony was not inadmissible hearsay, but was simply a recounting of events preceding the lawsuit. *See* Tex.R.Evid. 801(d). Assuming, arguendo, that it was hearsay, the testimony was still admissible because it fell within the exception to the hearsay rule on state of mind. Tex.R.Evid. 803(3). The evidence was probative of Payne's reliance on Edmonson's statements and should have been admitted. Because the exclusion of this evidence probably affected the jury's decision on the

issues of easements by estoppel, Tex.R. Civ.P. 434, we sustain cross-point one.

In cross-point of error two, Edmonson asserts that the court erred in excluding testimony and exhibits showing that a lease was being negotiated for ingress, egress, and parking on the subject property before Payne filed suit on March 30, 1984. Exhibit 92A is a letter dated March 23, 1984, from Payne's attorney to Edmonson's attorney, rejecting Edmonson's lease proposal and mentioning a counteroffer. Exhibit 93 is apparently Payne's counteroffer dated "the ____ day of March, 1984." Exhibit 94 is a letter dated March 15, 1984, from Edmonson's lawyer to Payne's lawyer proposing a lease for one year. The excluded testimony was that of Payne and his lawyer, Roderick Johnson, concerning the exhibits and communication between them and Edmonson and her lawyer during March 1984.

■ This testimony and these exhibits all related to the period of time immediately preceding the filing of this lawsuit on March 30, 1984. Clearly, there then was "a claim which was disputed," *see* Tex.R.Evid. 408, and this evidence showed that Payne was "offering ... a valuable consideration in compromising or attempting to compromise" that claim. *Id.* Payne's testimony on the bill of exception was that he preferred to pay some money and establish his rights under a lease rather than do nothing and let his rights be extinguished or engage in a major dispute with his neighbor. We hold that such evidence showed an offer to compromise and was inadmissible under Rule 408. The court did not err in excluding it.

Cross-point of error two is overruled.

■ By cross-points three through five, Edmonson complains of the trial court's submission to the jury of special issues two through four on implied easement appurtenant because there was no pleading or evidence raising the issues. Payne's second amended petition sought relief on the basis of implied easement. The evidence supporting these issues is discussed above in connection with points of error one through six. As indicated there, the evidence on necessity was deficient as a matter of law because another means of ingress and egress existed. We therefore sustain cross-point of error number five, having found no evidence of necessity. We overrule cross-points of error three and four, having found some evidence, more than a scintilla, of continuous and apparent use.

In cross-point seven, Edmonson complains of the trial court's submission of special issues 15 through 18 because there was no evidence to support their submission. Special issue 15 asked whether Edmonson represented to Payne that her driveway could be used for: (a) garbage pick up, (b) food deliveries, (c) ingress and egress, and (d) utility servicing. Special issues 16 and 17 asked whether Payne believed and relied on each of these representations. Special issue 18 asked whether any of the representations were false. The evidence supporting these issues is discussed above in connection with points of error seven through 11 and 16. Payne's testimony regarding Edmonson's representations was sufficient to raise these issues.

Cross-point of error seven is overruled.

In view of our disposition, we do not reach the remaining points and cross-points of error.

The judgment that appellant take nothing on his claim of easement by estoppel is reversed, and that cause of action is remanded to the district court for a new trial consistent with this opinion. In all other respects, the judgment is affirmed.