Irvine v. McCreary.

CASE  67—ACTION  FOR  INJUNCTION—MAY  19.

108 495
110 566

# Irvine v. McCreary.

APPEAL FROM . MADISON CIRCUIT COURT.

ACTION  BY  JAMES  B.  MCCREARY  AGAINST  ELIZABETH  S.  IRVINE.
JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.  AFFIRMED.

EASEMENTS—RIGHT TO USE ALLEY—INJUNCTION.

Held:   Where one conveys a part of his estate, he impliedly grants
all those visible easements upon the part retained which are at
the time used by him for the benefit of the part conveyed, and
which are reasonably necessary for the use of that part; and,
therefore, where each of three buildings owned by the same
person had a door and windows opening upon a common alley,
plaintiff, who .purchased one of the buildings, was entitled to an
injunction restraining defendants, who subsequently purchased
the other two buildings, from extending one of the buildings over
the alley so as to interfere with plaintiff's use of the alley, and
to deprive him of light and air.

J. TEVIS COBB, ATTORNEY FOR APPELLANT.

1. An easement can be granted only by grant, express or implied, or
by prescription, from which a grant is presumed.  It is an in-
terest in lands, and by the Statute of Frauds, can not be created
by parol. Hall v. McLeod, 2 Met., 98; Talbott v. Thorn, 91 Ky.,
417.

2. Air, light and ventilation; where one merely receives through
his windows, air, light and ventilation which come over his
neighbor's property. to reach him, he simply exercises his own
rights, upon his own lands; he does no harm to his neighbor
and for so exercising his rights no action will lie against him.
Mahan v. Brown, 13 Wend., 261; Shell v. Kemmerer, 13 Phila.,
502.

3. An easement in the unobstructed passage of light, air and venti-
lation can not be acquired by prescription.  Ward v. Neal, 37.
Ala., 500; Western Granite Co. v. Knickerbocker, 103 Cal., 3;
Parker v. Foote, 19 Wend., 309; Ray v. Sweeney, 14 Bush, 1;
Keats v. Hugo, 115 Mass., 204.

4. Neither is there an implied grant of the right to light, air or ven-
tilation over the grantors, other land adjoining the land con-

veyed. Robinson v. Clark, 65 Conn., 365; White v. Bradley, 66 Me., 254; Randall v. Sanderson, 111 Mass., 114; Colyer v. Pierce, 7 Gray, 18; Swansboro v. Coventry, 9 Bing., 305; Hobson v. Cartwright, 93 Ky., 368.

5. As to right of way to the so-called alley, which we claim is not an alley, but private property. 3 Kent's Com., page 452; Wheeler v. West, 71 Cal., 126; Wiseman v. Lucksinger, 84 N. Y., 31; Eckerson v. Crippen, 110 N. Y., 585; Foote v. Manhattan Railway, N. Y. Supp., 516; Pentland v. Keep, 41 Wis.; Gibson v. Porter, 12 Ky. Law Rep.; Barker v. Pierce, 42 Cal., 667; Taggart v. Warner, 83 Wis., 1; 53 N. W. Reporter, 33; Smith v. Miller, 11 Gray, 145; Henry v. Koch, 80 Ky., 391; Luecken v. Wuest, 31 Ill. App., 506; Bushey v. Sankiff, 67 N. Y. St., 187; Wildy v. Norfolk Railway Co., 96 N. C., 408; Barker v. Clark, 17 Am. Dec., 428; Plimpton v. Converse, 42 Ver., 712; Hall v. McLeod, 2 Met., 98; Conyers v. Scott, 94 Ky., 123; Howe v. Bell, 38 N. E. Rep., 200; Ryan v. Portman, 8 B. Mon., 232; Eckhart v. Irons, 128 Ill., 568; Boston Water Power Co. v. Boston, 127 Mass., 374; Kings Co. F. Ins. Co. v. Stevens, 101 N. Y., 411; Carey v. Rae, 58 Cal., 159; Pierce v. Shellack, 18 Com., 321; Oliver v. Pittman, 98 Mass., 46; Cooper v. Maupin, 35 Am, Dec., 456; Ward v. Robertson, 41 N. W., Rep., 603.

J. B. McCREARY and J. A. SULLIVAN for Appellee.

1. Apparent or implied easement.
2. What does the easement include?
   (a) The easement includes right of way over the alley.
3. Right by prescription. Am. & Eng. Ency., (New Edition), vol. 10 page 420, &c.; Lampman v. Milks, 21 N. Y., 505; Henry v. Koch, 80 Ky., 381 Robins v. Barnes, Hor., 131; Robinson v. Clapp, 65 Conn., 365; Wells Paine v. Chandler, 19 L. R. A., 99; Ebner v. Stechter, 19 Pa., 19; Thompson v. McElarney, 82 Pa., 174; Pierce v. Clelland, 7 L. R. A., 752; Strothneir v. Leahy, 10 Ky. Law Rep., 333; Lehigh Valley R. Co. v. McFarlan, 43 N. J. R., 605; Am. & Eng. Ency. of Law, vol. 19, page 22; 103 Ind., 582; 53 Am. Rep., 550.

Opinion of the court by JUDGE PAYNTER—Affirming.

C. D. Chenault became the owner of a parcel of ground situated on the corner of First and Main streets, in the city of Richmond, upon which a hotel was situated, known as the "Frances House." That building was destroyed

by fire, and he, by a contract with one Brawner, erected
three brick houses thereon, to which reference will be here
made. Two of the houses front on First street; the oth-
er, on Main street. Between the rear end of the corner
house, which fronts on First street, and the side of the
house which fronts on Main street, an alley was left, which
runs from Main street back to the wall of the other house
which fronts on First street. For convenience, we will
designate the corner house as No 1; the other one, front-
ing on First street, as No. 2; the one fronting on Main
street as No. 3. There is a common wall between Nos.
1 and 2, to the alley. From that point to No. 3, the wall
is alone used to inclose No. 2, and from the corner on
the alley formed by Nos. 2 and 3 to the opposite back
corner there is a common wall between Nos. 2 and 3.
There is a doorway which enters the cellar under No. 2
from the alley, the house being two stories high. There
are two windows,—one in the first and the other in the
second story, overlooking the alley. There is one door
entering the cellar under No. 1 from the alley and two
windows; one in each of its stories overlooking the alley.
There are also windows and a door fronting on the alley
in No. 3. The windows and doors were constructed as
if they were to be of a permanent and enduring character.

We give here a diagram showing the ground plan of the three houses:

On December 8, 1877, Chenault conveyed to the appellee, McCreary, brick storehouse No. 2. Subsequently he conveyed the other brick storehouses, Nos. 1 and 3, and by a succession of conveyances the appellant, Mrs. Irvine,

became the owner of them. She threatened to close up the alley by extending her house over it, which would have resulted in closing up the door to the cellar, and two windows overlooking the alley, from what we shall now call the "McCreary House." To prevent this being done, the appellee, McCreary, instituted this action, and obtained an injunction. If it is done, it will result in cutting off appellee's use of the alley, and his access to his cellar by the door leading thereto from the alley, and also shut out the light and air from the rear part of his building; it being about 65 feet long,—according to the proof, to do which would greatly diminish the value of his property. The court below adjudged that the appellant was not entitled to close up the alley.

The appellee testifies that, before he bought the property, Brawner and Chenault (Brawner then having a title bond for the lot from Chenault, upon which McCreary's house is situated), pointed out to him this alley, and told him that it was left open for the use of the three houses. Chenault does not contradict him on this question, but simply says he has no recollection of having made that statement to him. The testimony also tends to show that appellee's tenants, since the time he purchased it until this controversy arose, in about 1896, used the alley for the purpose of carrying their goods, boxes, etc., from the street into the cellar under the house. The appellee, as well as his tenants, claimed that they had the right to so use the alley. He also claimed that at the time he bought the property there was no door to close the alley from Main street. While there is proof that most of the time he has owned the property a door has inclosed the alley from the street, still that does not seem to have interfered with the use by appellee's tenants of the alley. There

is an absolute necessity for the alley for the useful enjoyment of the McCreary house, and to close it up will greatly damage it. This necessity was apparent at the time appellee purchased the property, as well as at all times thereafter during which the several conveyances were made by Chenault and his vendees. The doorway leading into the cellar, the windows above, and in fact the openings from the other houses on the alley, indicate that they were placed there for permanent use. Independent of what Brawner and Chenault said to appellee at the time he purchased the property, it must have been apparent to him and every other observing person that the alley was intended to be used by all who might occupy the three houses, and particularly by those who occupied the McCreary house. The title was in Chenault at the time the appellee purchased the property and the purchase money was paid to him. At that time Chenault held the title to each of the three houses, and, of course, a unity of title existed. As the windows and doors opening upon the alley indicated that it was to be permanently used, an obvious servitude was imposed in favor of each of the houses, and especially the McCreary house, because there was no way to reach the cellar in the rear end of the house except the door on the alley. Neither was there any means of giving light and air to that part of the house, and thus ventilation, if the windows and doors were closed. The door and windows opening onto the alley from the McCreary house are reasonably necessary for the fair enjoyment of the house. The deed which Chenault made to the appellee conveyed to him the house and lot and the appurtenances thereunto belonging, one of which is the permanent use of the alley for the purposes indicated.

This servitude was imposed by the owner of the alley by his conveyance to the appellee.

Washb. Easem. p. 81, says: "It may be considered as settled in the United States that, on the conveyance of one of several parcels of land belonging to the same owner, there is an implied grant or reservation, as the case may be, of all apparent and continuous easements or incidents or property which have been created or used by him during the unity of possession, though they could then have had no legal existence apart from his general ownership." It is said in Kent, Comm., 467: "Some things will pass by the conveyance of land, as incidents appendant or appurtenant thereto. This is the case with a right of way or other easement appurtenant to land. . . . And, if a house or store be conveyed, everything passes which belongs to and is in use for it, as an incident or appurtenance." In the case of Insurance Co. v. Patterson, 103 Ind., 582, 2 N. E., 188, it is said: "Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the same time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use. In such case the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made." In the case of Lampman v. Milks, 21 N. Y., 505, it is said:

"The rule of the common law on this subject is well set-
tled. The principle is that where the owner of two tene-
ments sells one of them, or the owner of an entire estate
sells a portion, the purchaser takes the tenement, or por-
tion sold, with all the benefits and burdens which appear
at the time of the sale, to belong to it, as between it and
the property which the vendor retains. This is one of
the recognized modes by which an easement or servitude
is created. No easement exists so long as there is a unity
of ownership, because the owner of the whole may at any
time rearrange the qualities of the several parts. But
the moment a severance occurs, by the sale of a part, the
right of the owner to redistribute the properties of the
respective portions ceases, and easements or servitudes
are created, corresponding to the benefits and burdens
mutually existing at the time of the sale. This is not a
rule for the benefit of purchasers only, but is entirely
reciprocal. Hence, if, instead of a benefit conferred, a
burden has been imposed, upon the portion sold, the pur-
chaser, provided the marks of this burden are open and
visible, takes the property with the servitude upon it.
The parties are presumed to contract in reference to the
condition of the property at the time of the sale, and
neither has a right, by altering arrangements then open-
ly existing, to charge materially the relative value of the
respective parts." The doctrine of Lampman v. Milks
was approved by this court in Henry v. Koch, 80 Ky., 395.
In Lebus v. Boston, 51 S. W., 609, this court held that
there was a general concurrence of authority, both in
England and in this country, in support of the proposition
that, on the grant by the owner of a tenement of part of
that tenement as it is then used and enjoyed, there will
pass to the grantee those easements which are necessary

to the reasonable enjoyment of the property granted, and which have been and are at the time of the grant used by the owner of the entirety for the benefit of the part granted. In that case the court quoted from Jones on Easements (section 129), wherein it is said: "Where one conveys. a part of his estate, he impliedly grants all those apparent or visible easements upon the part retained which were at the time used by the grantor for the benefit of the part conveyed, and which are reasonably necessary for the use of that part." We are of the opinion that the appellant is not entitled to close up the alley by the erection of a house on it or otherwise, and that the appellee is entitled to enjoy its use in connection with the other houses on it. The judgment is affirmed.

Judge Burnam not sitting.