BOB'S READY TO WEAR, INC., a Kentucky Corporation, Morris Glen Parman and Jack Edward Parman, Appellants,

v.

Drew C. WEAVER and wife, Betty Jane Weaver, Appellees.

Court of Appeals of Kentucky.

Aug. 11, 1978.

J. Milton Luker, London, for appellants.

Robert L. Milby, Joe T. Roberts, London, for appellees.

Before HOGGE, PARK and WHITE, JJ.

PARK, Judge.

This litigation is the result of the construction of a chain link fence along a portion of the common boundary line between owners of commercial property. The plaintiffs-appellants (the Parmans) are the owners of Bob's Ready to Wear Store located on Main Street within the city of London. The defendants-appellees, Drew and Betty Jane Weaver, own and operate a restaurant on a lot adjacent to Bob's Store. In addition, the Weavers own a lot at the rear of Bob's Store and the Weaver restaurant. This lot

is rented to the city as a municipal parking lot. The Weavers constructed a chain link fence which prevented any access between the parking lot and an entrance at the rear of Bob's Store.

The Parmans filed an action in the Laurel Circuit Court seeking an injunction requiring the removal of the fence and enjoining the Weavers from any further interference with access between Bob's Store and the parking lot. The Parmans asserted that they owned an easement by prescription, implication or equitable estoppel. Following a trial before the court, judgment was entered denying the injunction and dismissing the complaint. The Parmans appeal.

I

The facts in this case are not in dispute and can be understood by reference to the following diagram:

The property in question was originally part of a commercial block owned by the Eversole family. This block was bounded by Main Street on the east, Sixth Street on the north and Broad Street on the west. The Weaver family had conducted a restaurant in the building (A, B, H, G) at the corner of Main and Sixth Streets since 1940. Beginning in 1953, the Parmans had operated Bob's Store, a retail clothing business, in a building (G, I, K, J) adjacent to the Weaver restaurant fronting on Main Street. Immediately to the rear of the restaurant and store was a vacant lot extending along Sixth Street to Broad Street. In 1965, the Eversole family leased the lot to the city of London. The city installed parking meters, and the city has operated the property (C, N, M, L) as a municipal parking lot.

In 1971, the Weavers and the Parmans purchased from the Eversole family the buildings presently occupied by the respective parties. In addition to the property previously occupied by Bob's Store, the Parmans purchased a portion of the building which had been a part of the Weaver Restaurant (D, E, H, G). The building originally occupied as Bob's Store extended back from Main Street approximately 100 feet. The building originally occupied by the Weavers extended back a distance of only 80 feet. In order to make the rear property lines (C, F, I, L) straight, the conveyance from the Eversole family to the Parmans included a small paved lot (E, F, I, H) approximately 20 feet square at the rear of that portion of the building that had previously been released to the Weavers. A similar paved area (B, C, F, E) approximately 20 feet square was included in the conveyance from the Eversole family to the Weavers.

At the time of the conveyances by the Eversole family in 1971, there were no

physical barriers between the paved parking lot leased to the city and the paved area at the rear of Bob's Store and the Weaver restaurant. Shortly after acquiring title to their respective buildings, the Parmans and the Weavers both made significant structural and decorative improvements to the rear entrances of their respective buildings. The Parmans installed display windows and a new door (point X) which opened onto the 20 foot plot acquired with the building by the deed from the Eversole family.

The municipal parking lot was used by customers as a means of access to the rear entrances to Bob's Store and to the Weaver's restaurant. In addition, trucks used the parking lot as a means of access to the rear of Bob's Store for the purpose of making deliveries or picking up refuse. In 1976, the Eversole family conveyed the parking lot property to the Weavers. The city continues to maintain a municipal parking lot on the property, but only as a tenant from month to month. Following their purchase of the parking lot property in 1976, the Weavers closed off the rear entrance to Bob's Store by erecting a chain link fence (E, F, I) along the two open sides of the 20 foot plot at the rear of their building. At the present time, the only functional purpose of the fence is to block access between Bob's Store and the municipal parking lot.

## II

■ The Parmans claim a right of access over the parking lot property under the theory that an easement of access was acquired by prescription. The trial court correctly rejected this contention. The Parmans argue that for a period of forty years they and their predecessors in the location have used the parking lot to gain access to the back entrance to their business establishment. The only evidence relating to the period of time prior to the Parmans' tenancy beginning in 1953 was that of a prior tenant, Ernest Kidd. Kidd was not in privity with the owners of Bob's Ready to Wear. Therefore, the Parmans cannot tack the

period of Kidd's occupancy for purposes of making up a prescriptive period. 2 *American Law of Property* § 8.59 (1952); *Griffith v. Dicken*, 34 Ky. (4 Dana) 561 (1856).

More important, the evidence demonstrates that the use by the occupant of the Parman portion of the building was with the permission of rather than adverse to the rights of the Eversoles. The lot in question has been at all times open to the public. Prior to leasing the property to the city, the Eversoles permitted its use as a parking lot and taxi stand, evidently for the benefit of its commercial tenants in the adjacent building. Since 1955 the city has operated the lot expressly for the benefit of the general public. Use of semi-public property which has been designedly left open and unenclosed is generally regarded as permissive and not adverse to the interest of its owner. See the cases cited in the Annotation, 46 A.L.R.2d 1140 at 1157 (1956). The trial court did not err in concluding that the Parmans had not acquired an easement by prescription.

## III

■ The Parmans also argue that an easement by implication resulted from the sale of the Bob's Store building by the Eversole family to the Parmans in 1971. When finding an easement by implication, courts in effect infer an unarticulated intention by the owner of property that a particular use of one portion of the property for the benefit of another portion be continued although one or both segments of the whole are conveyed away. Necessarily, the use sought to be imposed upon the servient tract for the benefit of the dominant tract must have been initiated when both tracts were the property of a common owner. Once common ownership is established and the particular use is found to have been initiated prior to severance, the determination whether the creation of an easement was intended will depend upon a number of factors. 2 *American Law of Property* § 8.31 (A. J. Casner, ed. 1952).[1]

1. The term "easement by implication" includes both easements of necessity and so-called quasi-easements.

Until 1971, the Eversoles owned the property occupied by the commercial building fronting on Main Street and the adjacent property to the rear which was used as a parking lot. During the entire period of their ownership prior to the severance of the commercially improved portion of the property, the Eversoles permitted free access from the parking lot to the rear exits of the building. Therefore, the Parmans have satisfied the two threshold prerequisites to a finding of an implied easement.

■ Among the factors bearing upon the intention of the grantor and grantee are the following: (1) whether the claimant is the grantor or the grantee of the dominant tract; (2) the extent of necessity of the easement to the claimant; (3) whether reciprocal benefits accrue to both the grantor and grantee; (4) the manner in which the land was used prior to conveyance; and (5) whether the prior use was or might have been known to the parties to the present litigation. *Knight v. Shell*, 313 Ky. 852, 233 S.W.2d 973 (1950); 5 *Restatement of the Law of Property* § 476 (1944); Note, Implied Easements of Necessity Contrasted with those Based on Quasi-Easements, 40 *Ky.L.J.* 324 (1952).

■ Courts imply an easement more readily in favor of a grantee than a grantor. The Parmans claim an easement by implication as grantees from the Eversole heirs, the original owners of all the property. For many years prior to the 1971 conveyance, the parking lot had been openly and continuously used as a means of access to the rear entrances of the buildings fronting on Main Street. While they were tenants of the Eversole heirs, the Weavers had enjoyed free access to the rear entrance of their business across the parking lot. Following the 1971 sales,.both the Weavers and the Parmans continued to use the parking lot as a means of access to the rear of their buildings. One of the Eversole heirs testified that she specifically advised the Weavers prior to the 1976 sale of the lot that the Parmans had a right of access to and from the parking lot. All of these factors favor finding an easement by implication in favor of the Parmans.

■ When the question of necessity is considered, the facts are less clear. The main entrance to Bob's Store is from Main Street, the main thoroughfare in the city. Recently, the Parmans have opened an entrance leading to Fifth Street through other property. There is no showing of absolute necessity for access to the parking lot. However, absolute necessity is not required. The fact that the Parmans have other access to their store is not an automatic bar to their claim to an easement by implication to the parking lot. *Irvine v. McCreary*, 108 Ky. 495, 56 S.W. 966 (1900). All that is required is that the easement be "reasonably necessary." *Knight v. Shell, supra*, 313 Ky. 852, 233 S.W.2d at 975. Without access to the parking lot which opened on Broad and Sixth Streets, the recently developed rear entrance to Bob's Store becomes landlocked. The 20 foot plot at the rear of Bob's Store becomes virtually useless if the Weavers are permitted to cut off all access to the parking lot. The trial judge specifically found that the Parmans had suffered and would in the future suffer monetary damages from the maintenance of the chain link fence.

The last factor to be considered is whether reciprocal benefits accrue to both the grantor and the grantee if an easement is implied as a part of the 1971 conveyance from the Eversole heirs to the Parmans. The benefit to the Parmans is obvious if customers may use the rear entrance to Bob's Store only a few feet from the parking lot. Access to the public parking lot at the rear of the building can only have enhanced the purchase price paid by the Parmans to the Eversoles. In turn, Bob's Store would attract customers to the parking lot thereby enhancing the value of that property. Unfortunately, an easement by implication would be of mutual benefit to grantors and grantees only so long as a public parking lot was maintained on the property to the rear of Bob's Store. The existence of an easement from Broad Street across the lot to the rear of Bob's Store would be an extremely heavy burden impeding any fu-

ture development of this valuable city property.

Giving consideration to the relative nature of the necessity for an easement of access to the parking lot and the possible future burden to the Weavers, we conclude that the evidence was not so overwhelming as to require the trial judge to find that an easement by implication existed. Balancing the interest of both parties, we conclude that the trial judge did not err in refusing to adjudge the Parmans an easement by implication.

## IV

The Parmans assert that the Weavers are estopped to sever access between the rear entrance of Bob's Store and the municipal parking lot by construction of the chain link fence. Not having an easement for access across the parking lot to the rear of the Bob's Store, the Parmans had only a license to use the parking lot. As a general rule, a license is revocable at the will of the owner of the property subject to the license. However, an owner may be estopped to revoke the license when, with the knowledge of the owner, the licensee makes valuable improvements in reliance upon the continued existence of the license. *Holbrook v. Taylor*, Ky., 532 S.W.2d 763 (1976).

Following the purchase of their building in 1971, the Parmans made valuable improvements to the rear entrance to Bob's Store. These improvements were made with the knowledge of both the Eversole heirs and the Weavers. The only purpose for the new rear entrance was as a means of access to and from the municipal parking lot. The value of the improvements would be destroyed if access to the parking lot were blocked. The city of London continues to maintain a municipal parking lot on the property leased from the Weavers. The only purpose of the chain link fence is to revoke the Parmans' license by obstructing access to the parking lot. There is detriment to the Parmans and no benefit to the Weavers. Under these circumstances, we conclude that the Weavers are estopped to

revoke the Parmans' license for access between the rear entrance to Bob's Store and the parking lot.

Even if the Weavers are estopped to revoke the Parmans' license across the parking lot, it does not follow that the Parmans have, in effect, an unlimited easement of access across that tract. The duration of a license may be limited even though the licensor is estopped to revoke the license:

Since the estoppel to terminate a license arises out of action taken in reliance upon representations as to duration of the license, the extent of the estoppel is measured, in part at least, by the extent of the action taken. The fact that a licensor is estopped to revoke or terminate a license altogether does not necessarily mean that the license constitutes an irrevocable privilege in accordance with its terms. It means that it is irrevocable to the extent necessary to prevent the licensee from being unfairly deprived of the fruits of expenditures made by him. It may still be possible to terminate at will some though not all of the privileges created by the license.

*Restatement of the Law of Property* § 519, Comment *g.* (1944). The improvements made by the Parmans to the rear entrance to Bob's Store were substantial. Nevertheless, the expenditures were not so substantial that the Parmans were entitled to assume that the property subject to the license would be maintained as a public parking lot forever.

We conclude that the Parmans could reasonably rely upon the continuation of the license only so long as the property was maintained as a public parking lot. Clearly, the Parmans have no right to compel the Weavers to maintain the property as a public parking lot. When a landowner grants a license for a limited purpose, licenses which are irrevocable because of estoppel should not be extended beyond their original purpose to additional uses. *Smallwood v. Diz*, Ky., 245 S.W.2d 439 (1952). In this case, the primary purpose of the license is a means of access between Bob's Store and

the municipal parking lot. If the Weaver property should cease to be used as a parking lot open to members of the public, then the Parmans' license should also cease. In this way, the improvements made by the Parmans in reliance upon the existence of the license may be balanced against the right of the Weavers to devote their property to a more profitable use. Of course, any decision on the part of the Weavers to terminate the use of the property as a public parking lot must be made in good faith and not merely for the purpose of denying the Parmans their rights established by this litigation. *Wilson v. Irwin*, 144 Ky. 311, 138 S.W. 373 (1911).

## V

The judgment of the circuit court is reversed with directions to enter a judgment enjoining the Weavers from obstructing or interfering with access between the rear entrance of Bob's Ready to Wear Store and the parking lot property owned by the Weavers, for so long as the Weavers' property shall be maintained as a parking lot open to the public.

ALL CONCUR.