RENDERED: JUNE 9, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1002-MR

RICHARD A. CASE, II AND
JENNIFER S. CASE                                          APPELLANTS

|  | APPEAL FROM ANDERSON CIRCUIT COURT |
|---|---|
| v. | HONORABLE CHARLES R. HICKMAN, JUDGE |
|  | ACTION NO. 18-CI-00244 |

JENNIFER C. HAYS AND
LARRY E. HAYS                                             APPELLEES

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND ECKERLE, JUDGES.

ECKERLE, JUDGE:  In her Will, a mother split the family farm into three tracts, one to the north, one to the south, and one in the middle, and divided the three between two adult children.  As three does not evenly divide by two, one child now possesses two tracts – the northern and the southern tracts.  That child wants an

access easement roughly bisecting the middle tract. Though the mother granted express access easements along the eastern edge, none existed along the one child's desired route. Following a bench trial, the Trial Court found a quasi-easement existed for the route that bisected the middle tract. The owner of the middle tract appeals, claiming the Trial Court failed to analyze the issue fully and erroneously found a quasi-easement. We agree, and after a *de novo* review of the full legal test, we find no quasi-easement exists. Accordingly, we vacate and remand for entry of a judgment in conformity with this Opinion.

## BACKGROUND

Richard A. Case, II (hereinafter "Case") and Jennifer Hays (hereinafter "Hays") are siblings[1] whose mother, Joyce Case (hereinafter the "Mother"),[2] owned a nearly 400-acre farm in Anderson County, Kentucky. A portion of the farm located to the east bordered U.S. Highway 127 (hereinafter "US 127"), allowing roadway access. Many years before her death, Mother executed a Will that would, upon her demise, divide the property into three tracts of roughly similar acreage, one to the north (hereinafter "Tract 3"), one across the middle (hereinafter "Tract 2"), and one to the south (hereinafter "Tract 1"). Mother

---

[1] They are joined on appeal by their respective spouses, and any reference herein to Case or Hays includes their respective spouses.

[2] The Mother's husband, Richard A. Case, predeceased her.

expressed her intention in the Will to grant Case Tract 2 and Hays Tract 3 (as it could be accessed from Hays' current residence). Mother further provided in her Will that the last parcel, Tract 1, which contained the family residence, would be sold to the highest bidder at a private auction between Case and Hays. The Will provided that if Hays purchased Tract 1, she would have an access easement for Tract 1 only across Tract 2 and permitting access to US 127.

Prior to her death, however, Mother executed a minor subdivision plat creating the three tracts and conveyed Tract 2 to Case.[3] The minor subdivision plat granted each tract a minimum 50 feet of road frontage, as required by local regulations, and it also had an 80-foot-wide easement for Tract 3 to access US 127 at the eastern portion of the property. The plat also showed an access easement for Tract 1 across Tract 2 for access to US 127. Accordingly, one who possessed Tracts 1 and 3 could travel between them by using these easements or from US 127. The Tract 3 easement was subject to much testimony at the subsequent bench trial, as portions of it were in the floodplain and creek bed, potentially limiting its usability.

Following her death, and per the terms of the Will, the northern tract, Tract 3, was devised to Hays. At the private auction, Hays was the highest bidder

---

[3] It appears some measure of distrust arose between Case and Hays leading to the minor subdivision plat's creation.

and purchased Tract 1, the southern tract. Hays then sought to traverse Tract 2 along what has been colloquially called a "farm road," which roughly bisects Tract 2. Case shut down this access, and Hays eventually filed suit seeking a judicial determination that a quasi-easement exists.

Following a bench trial on Hays' claim, the Trial Court entered a detailed Findings of Fact, Conclusions of Law, and Judgment. We reproduce the findings of fact, as they are pertinent to our appellate review of the legal issue:

> 1. Joyce Case and her husband Richard A. Case were the owners of a farm in Anderson County, Kentucky which consists of over 380 acres. Joyce Case and Richard A. Case are the parents of Plaintiff Jennifer C. Hays (hereinafter "Jennifer") and Richard A. Case, II (hereinafter "Richard"). Richard A. Case predeceased his wife Joyce, and Joyce became the sole owner of the farm in fee simple pursuant to the survivorship provision in the farm's deed.
>
> 2. Joyce executed her Last Will and Testament on March 31, 2011. Joyce's will sought to divide the family farm between her children. The Will specifically devised the North Parcel, known as Tract 3 during the trial and in the parties' exhibits, to Jennifer and Tract 2, the South Parcel, was devised to Richard. Tract 1, where Joyce's home was located, was subject to a private auction between Jennifer and Richard, and would be sold to the highest bidder. Jennifer was ultimately the highest bidder, and she and her husband are the owners of Tract 1.
>
> 3. Tract 1 was referred to as the "remainder" in Joyce's Will, and it states in pertinent part, as follows:

-4-

(D) The remainder of the 269 acre parent tract is to be sold to either my daughter, Jennifer C. Hays, or to my son, Richard A. Case, II, at private auction to the highest bidder. In the event my daughter, Jennifer C. Hays is the purchaser, the devise to my son, Richard A. Case, II, above, shall be subject to an ingress-egress easement to access the remainder over the existing roadway on the property being devised to Richard A. Case, II, and shall further be subject to a deduction in area, which deduction shall be added to the remainder, to allow the remainder to be in compliance with local zoning by having fifty (50) feet of road frontage.

4. The Court notes that the above-cited provision of the Will says nothing about any easement across Tract 2 to connect Tract 1 and Tract 3. The plain language indicates that Joyce wanted the devise of Tract 2 to be subject to an easement (over the existing roadway) to provide access for Tract 1.

5. The Court notes that the devise of Tract 3 to Jennifer in Joyce's Will specifically acknowledges that this parcel of land is adjacent to property owned by Jennifer and her husband Larry Hays located at 1090 General Cable Drive. Jennifer and Larry Hays's property north of Tract 3 is depicted on the Dan Phillips survey.

6. Tract 3 may be accessed through Jennifer and Larry Hays adjacent property located at 1090 General Cable Drive.

7. In May of 2016, Richard retained Dan Phillips of DPS Land Surveyors, Inc. to survey and prepare a Plat depicting Tracts 1, 2, and 3. Joyce Case executed a Deed of Conveyance dated June 23, 2016 to transfer Tract 2 to Richard, and her signature also appears on the survey prepared by Phillips.

8. Richard testified that he requested that his mother transfer the real property to him prior to her death, as Jennifer was designated as his mother's executrix, and he did not trust Jennifer.

9. Jennifer testified that her mother was diagnosed with a mass in her abdomen in March, 2016, and her mother refused further medical treatment. Joyce Case was placed in Hospice care in March of 2016, and she died in November of 2016. Jennifer testified that she was not confident in her mother's fitness to execute the deed to Richard given her health struggles.

10. The Plaintiffs have not asserted any claim/cause of action that Joyce Case lacked the capacity to execute the Deed to Richard or sign the Phillips' plat.

11. The Deed of Conveyance for Tract 2 does not set forth any language indicating that the land is subject to an easement. The Deed does reference the Plat prepared by Dan Phillips which reflects the "existing gravel lane" which travels across part of Tract 2 to provide ingress-egress from Highway 127 to Tract 1. The survey states that "Tract 1 retains a 30' foot easement for ingress and egress along the centerline of existing gravel lane through Tract 2."

12. The existing gravel lane links to the 80' foot [sic] wide easement reflected on the survey as "80' Access Easement for Tract 3" at the existing entrance to the tracts from Highway 127. This 80' foot [sic] easement provides Tract 3 with over fifty-feet [sic] of road frontage. (Note: The unique contours of Tract 3 was to ensure the road frontage required by zoning regulations.)

13. The Court finds that the Deed of Conveyance dated June 23, 2016 to Richard and the survey that was executed in conjunction with the Deed was consistent with what Joyce set forth in her.Will [sic]. The survey reflects the ingress-egress easement along the existing

gravel road to provide access through Tract 2 to provide access for Tract 1, which is all that was provided for in Joyce's Will.

14. To access the bulk of Tract 3 from Highway 127, one must cross over Hammonds Creek. Defendants' Exhibit 8A depicts in color the contours of Tract 3, which shows Tract 3 following along beside Hammonds Creek from Highway 127, with Tract 3 being approximately 50' foot [sic] in width along beside the creek.

15. The Defendants point out that a person may walk or ride a dirt bike from Tract 1 through Tract 2 to access Tract 3 utilizing the easements set forth in the Phillips survey. However, one cannot currently access Tract 3 by car/truck via this same route because of trees alongside the creek and the need to cut into the creek bank to create a crossing.

16. The Defendants elicited testimony from the Plaintiffs that they own a bulldozer which could perform work to remove trees and create a crossing across the creek to utilize the dimensions of Tract 3 and easements depicted on Phillip's plat for the Plaintiffs to traverse from Tract 1 to Tract 3.

17. Jennifer Hays and Larry Hays both testified that accessing Tract 3 from Highway 127 along side the creek bed was not practical as the area is steep and lined with tress [sic]. Larry Hays stated that to cut a new creek crossing would require a permit from the state Division of Water and there was no guarantee that such permit would be granted a [sic] Hammonds Creek is a year-round flowing stream. (No documentation was provided regarding the requirement of a permit from the Division of Water.)

18. The creek is a flowing stream which is present year-round and any path alongside the creek would be located in the flood plain for the creek. The use and maintenance

of any path alongside or unimproved crossing cut in across the creek would be impacted by the level of the creek.

19. Plaintiffs' suit claims that there is a well-worn "farm road" which provides access from Tract 1 to Tract 3 through Tract 2 which should be recognized as a quasi-easement by implication, arguing that it existed, was manifest and obvious, and was utilized during the parties' parents [sic] ownership of the farm prior to the division of the property by their mother, Joyce Case. This alleged road/easement is depicted by a pink line drawn on the Phillips' plat reflected in Plaintiffs' Exhibit 2B and Defendants' Exhibits 11 and 12. (Note: The alleged easement is not depicted on the survey plat completed by Phillips, the pink line was added by the parties' to depict the location where the Plaintiffs' [sic] claim was the well-worn farm road.)

20. Jennifer Hays testified that her parents acquired the farm in the 1970s and the farm road on Tract 2 was utilized by her parents, family, farm hands, and employees to move farm equipment and crops across the farm property as a whole. Jennifer Hays testified that the farm road was used continuously and that it was in continued use after Joyce Case's death until Richard asked Jennifer and her family to stop using the farm road in September of 2017.

21. Jennifer Hays' husband Plaintiff Larry Hays testified that he had worked on the farm when it was owned by Jennifer's parents, and that the farm road through Tract 2 was used to move tobacco and hay across the farm property. Larry Hays stated that the use of the farm road was continuous, obvious and manifest.

22. Larry Hays testified that Tract 3 can be accessed via General Cable Drive.

23. Chris Wright, the Plaintiffs' son-in-law, testified that he had been a visitor to the land at issue for approximately 10 years and during that time he witnessed continuous use of the farm road by Jennifer Hays's parents and her family.

24. Allen Hellard, a friend of Plaintiff's son Joshua Hays, testified that he went hunting on the land at issue twenty years ago, and he recalls using the farm road to access their hunting site on Tract 2.

25. Plaintiffs' daughter, Rebecca Wright, testified that she recalls that the farm road has been used continuously by her grandparents and parents for approximately thirty years.

26. Another daughter of the Plaintiffs, Sarah Flores, testified that she can recall her grandparents and parents continuously using the farm road since the early 1990s.

27. Plaintiffs' son, Joshua Hays, testified that he recalled continuous, obvious and manifest use of the farm road by his grandparents and parents for approximately 40 years.

28. Jennifer Hays and Richard Case's nephew testified that he recalled continuous use of the farm road by his grandparents and Plaintiff and her family since he was a young child.

29. Defendant Richard A. Case, II testified that there was never a dedicated, obvious roadway through what became Tract 2. Richard testified that Tract 2 was traversed in whatever direction one wished to go and that there was not a designated pathway. Richard acknowledged that there was a creek crossing at the location identified by Plaintiffs as being on the farm road but indicated that [the] particular crossing was not the only unimproved creek crossing.

30. A Google Earth aerial photograph of the land at issue was entered as Plaintiffs' Exhibit 3. It is not clear when Google Earth captured this aerial image of the land. The Google Earth photograph showed what appeared to be a vague impression in the ground of a roadway which traversed through portions of Tract 2. It is not clear enough to determine if the vague impression of a roadway on the Google Earth image matches the claimed farm road.

31. Gary Sharp testified that he had permission to hunt on Tract 2 in 2017, and that he did not observe a farm road on the property. Sharp did not have knowledge of the property prior to 2017.

32. Scott Williams testified about visiting Tract 2 in July or August of 2016, and that he did not observe an established roadway or farm road on the property. Williams occasionally checks on the property for Richard, but had not visited the property prior to 2016.

33. Mark Cox was contracted to cut hay for Richard on Tract 2 in either 2017 or 2018. Cox did not observe a farm road located on Tract 2. On cross-examination he identified a portion of the vague impression of the roadway depicted in the Google Earth image as where he brought his equipment and hay out of Tract 2. Cox indicated that the grass was approximately 2' tall when he viewed the property and there was no roadway evident.

34. Richard's witnesses indicated that Tract 2 was overgrown and "wild", and that there was not an obvious road or pathway present across Tract 2 when they observed the property in 2016 through 2018.

The Trial Court then made conclusions of law. First, the Trial Court

rejected Hays' argument that her Mother's Will provided for the farm road as an

-10-

express easement across Tract 2 connecting Tracts 1 and 3. The Trial Court found that the reference to an "existing roadway" in the Will was to the 30-foot easement across Tract 2 providing for access to the house located on Tract 1 as shown on the Phillips' minor plat. The Trial Court further rejected the assertion that Hays' parents gave any express, written grant of an easement across Tract 2 for travel between Tracts 1 and 3.

The Trial Court then held that a quasi-easement by implication had been created across Tract 2. The Trial Court reasoned that the aforementioned farm road met the three requirements of *Carroll v. Meredith*, 59 S.W.3d 484 (Ky. App. 2001) for proving a quasi-easement by implication, namely: (1) there was a separation of title from common ownership; (2) before the separation occurred there was a use which gave rise to the easement that was so long continued, obvious, and manifest that it must have been intended to be permanent; and (3) the use of the claimed easement was highly convenient and beneficial to the land conveyed. The Trial Court also found that use of the farm road was reasonably necessary to the enjoyment of Tracts 1 and 3:

> Herein, there was a separation of title from common ownership. The Plaintiffs called six witnesses at trial who recalled the existence and location of the farm road on Tract 2 which provided access from the area which is now identified Tract 1 to access what is now identified as Tract 3. The Plaintiffs' witnesses testified that the farm road has been in use and existence from the 1970s through 2017 when Richard Case asked

that Jennifer Hays and her family to cease using the farm road. The Plaintiffs' witnesses' testimony was consistent that the farm road through Tract 2 was a long continued use which was obvious and manifest. The Court notes that all the witnesses called on behalf of the defense, testified that they did not observe the farm road on Tract 2 had only limited familiarity with the property and had only been on the property from 2016 through the present time frame. The Plaintiffs also seek to establish the importance of the farm road to provide access to Plaintiffs' Tract 3. Jennifer Hays and Larry Hays have access to Tract 3 via the property they own which has road access via General Cable Drive. It is noted that should Jennifer and Larry Hays ever choose to sell their property adjacent to Tract 3, they would be able to reserve an easement across that property to provide access to Tract 3. The focus herein is on a route between Tract 1 and Tract 3 through Tract 2. The property was only separated into the three separate tracts in 2016. According to the testimony presented by the Plaintiffs, the farm road they seek to have recognized as a quasi-easement was continuously utilized when the three tracts were held under common ownership to traverse the farm property from the entrance off Highway 127 through what was later Tract 2 to access the portion of the farm property which is now Tract 3. The entrance off Highway 127 provides access to the gravel lane (recognized as an express easement in Joyce Case's Will and on the Phillips' plat) which provides access to the house on Tract 1. Thus, with the recognition of the farm road as a quasi-easement and the gravel lane easement, the Plaintiffs would have access between Tract 1 and Tract 3. The Plaintiffs' witnesses all had great familiarity with the farm property since it was held under common ownership and all confirmed that the farm road was obvious, manifest, and subject to a long continued use. The Court finds their testimonies to be consistent, credible and determinative that the use of the farm road was of a continuous, permanent and apparent nature. The Court also finds that recognizing the farm road as a

-12-

quasi-easement is reasonably necessary to the enjoyment of Tracts 1 and 3. *Carroll v. Meredith*, 59 S.W.3d 484, 490 (Ky. App. 2001) provides that "reasonably necessary" means "more than merely convenient to the dominant owner, but less than a total inability to enjoy the property absent the use." The Court finds that the farm road provides more than mere convenience to Tracts 1 and 3, continues the long use of the farm road, and provides for the beneficial enjoyment and use of Tracts 1 and 3 as farm land.

There was evidence presented about Plaintiffs creating an access point from U.S. Hwy 127 Bypass for Tract 3. In its current state, this access cannot be used as a practical matter because of the presence of numerous trees, steep land. Should a pathway be created in this area it would be in the flood plain alongside the creek which is a year-round flowing creek. The farm road has a creek crossing, but is not in a flood plain and was used when the farm was under common ownership to traverse across the farm property. This fact lends support to the third element to be established for a quasi-easement, i.e. that the claimed easement is highly convenient and beneficial to the land conveyed. The Court would agree that the farm road is both highly convenient and beneficial to the land and is reasonably necessary to the enjoyment of the quasi-dominant tracts, i.e. Plaintiffs' Tract 1 and Tract 3. Based on the foregoing, the farm road is hereby recognized as a quasi-easement by implication across Tract 2 to provide access between Tract 1 and Tract 3.

The Trial Court further ordered that the width of the easement would be 15 feet, with the centerline to be determined by a land surveyor and shown as a recorded amendment to the previously filed, minor subdivision plat.

-13-

## ANALYSIS

Case raises two allegations of error on appeal. First, Case claims that the Trial Court failed to conduct the second step in the quasi-easement analysis, namely the five factors that are used to determine the intention of the grantor and grantee. Second, Case claims the Trial Court made certain errors in its findings of fact. After laying out the standard of review, we first address the factual claim and then conduct a *de novo* review of the legal issue.

### I. Standard of Review.

Because the underlying judgment is from a bench trial, we review the findings of fact for clear error and give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." CR[4] 52.01. Clear error occurs in factual findings when those findings are unsupported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Substantial evidence is defined as "that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Nat. Res. and Env't Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994) (citations omitted).

Our deference under CR 52.01 to the factual findings is largely because it is the Trial Judge who is in the best position to observe and weigh the

---

[4] Kentucky Rules of Civil Procedure.

credibility of witnesses. *Bishop v. Brock*, 610 S.W.3d 347, 350 (Ky. App. 2020). We defer to factual findings "[r]egardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding[.]" *Moore*, 110 S.W.3d at 354 (footnotes and citations omitted).

However, the conclusions of law are not afforded deference and are reviewed *de novo*. *Hoskins v. Beatty*, 343 S.W.3d 639, 641 (Ky. App. 2011) (citing *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky. App. 2005)).

Finally, because Hays was seeking an implied easement, she had "the burden of proving the existence of the easement by clear and convincing evidence." *Gosney*, 163 S.W.3d at 901 (citations omitted). With these standards in mind, we now review the Trial Court's judgment.

## II.    The Trial Court's Factual Findings Were Supported by Substantial Evidence.

Case claims that the Trial Court misstated the facts as they relate to the express, written easements on the minor subdivision plat. Case requests that we vacate and remand for the Trial Court to re-address the inconsistency. Hays responds that Case errs by reading the Trial Court's conclusions out of context. We find that while the language used in the Trial Court's opinion could lead to some confusion, its factual findings are supported by substantial evidence and do not warrant vacating and remanding for additional findings of fact.

-15-

In the Trial Court's conclusions of law, the Trial Court was discussing whether there was any express, written easement or any understanding that Mother intended the farm road to serve as an access easement across Tract 2. The Trial Court reviewed the minor subdivision plat and the deed for Tract 2 and concluded no easement was created by express, written grant. We believe that such statement is not a conclusion of law, but a finding of fact, and it is erroneous if unsupported by substantial evidence. Here, the minor subdivision plat clearly shows an "80' ACCESS EAEMENT [sic] FOR TRACT 3, EXISTING ENTRANCE TO HWY 127" access easements across Tract 2 and adjacent to US 127 that would constitute an express access easement between Tracts 1 and 3. However, the Trial Court correctly concluded that the farm road was not an express easement, as it is not shown on the minor subdivision plat, not included in the deed conveying Tract 2, and not included in the Will. Thus, to the extent that the Trial Court found that the farm road did not constitute an express easement, such finding is supported by substantial evidence.

However, and this is the part where the confusion lies, if the Trial Court's judgment reads that there was no express access easement at all, such finding is not supported by substantial evidence. The minor subdivision plat clearly shows an access easement connecting Tracts 1 and 3 across Tract 2 adjacent to US 127. However, any alleged, factual error on this basis is a *non*

-16-

*sequitur*, as the underlying issue regards a quasi-easement, not an express easement, and the Trial Court simply concluded that there is no express easement for the farm road. Moreover, the Trial Court's factual findings described the express access easement and the challenges inherent with using it. The parties do not dispute that this access easement exists on the minor subdivision plat, and the Trial Court's order does not alter this express easement in any way. Thus, with this clearer picture of the existing, express easement, we can proceed to a *de novo* review of the legal conclusions.

### III. The Trial Court's Legal Conclusions Were Erroneous.

The principal issue before us is whether the Trial Court correctly held that there existed a quasi-easement across Tract 2 where the commonly referred to farm road previously existed. We review this conclusion of law *de novo*.

"Generally, an easement may be created by express written grant, implication, prescription or estoppel." *Gosney*, 163 S.W.3d at 899 (citation omitted). A quasi-easement is one of two types of easements that are created by implication. *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky. App. 2001).[5] Quasi-easements arise "upon a severance of the ownership" after one owner of a tract of land or two or more adjoining parcels previously used one part such that another

---

[5] The other easement by implication is an easement or way by necessity. *Carroll*, 59 S.W.3d at 489. Such easement is not before us.

part of the land derived a benefit from it of a "continuous, permanent and apparent nature, and reasonably necessary to the enjoyment of the quasi-dominant portion[.]" *Kreamer v. Harmon*, 336 S.W.2d 561, 563 (Ky. App. 1960) (citations omitted).

A quasi-easement is not borne out of an express, written grant. Instead, "[t]his theory is based on a legal inference that the original owner intended to create an easement in favor of one section of his realty." *Cole v. Gilvin*, 59 S.W.3d 468, 476 (Ky. App. 2001). "When finding an easement by implication, courts in effect infer an unarticulated intention by the owner of property that a particular use of one portion of the property for the benefit of another portion be continued although one or both segments of the whole are conveyed away." *Bob's Ready to Wear, Inc. v. Weaver*, 569 S.W.2d 715, 718 (Ky. App. 1978).

Analyzing whether a quasi-easement exists involves a two-step process. The first step requires a party to satisfy either two or three threshold elements before proceeding to the second step. For example, in *Bob's Ready to Wear*, there were two "prerequisites" – common ownership and initiation of use prior to severance – that had to be established prior to an analysis of at least five "factors" weighing the intentions of the grantor and grantee in impliedly establishing an easement. Those "factors" in the second step were:

> Among the factors bearing upon the intention of the grantor and grantee are the following:  (1) whether

-18-

the claimant is the grantor or the grantee of the dominant tract; (2) the extent of necessity of the easement to the claimant; (3) whether reciprocal benefits accrue to both the grantor and grantee; (4) the manner in which the land was used prior to conveyance; and (5) whether the prior use was or might have been known to the parties to the present litigation.

569 S.W.2d at 718-19 (citations omitted).

In like vein, there were three threshold elements in *Carroll* that had to be proven in the first step:

(1) that there was a separation of title from common ownership; (2) that before the separation occurred the use which gave rise to the easement was so long continued, obvious, and manifest that it must have been intended to be permanent; and, (3) that the use of the claimed easement was highly convenient and beneficial to the land conveyed.

*Carroll*, 59 S.W.3d at 490 (citing *Evanik v. Janus*, 458 N.E.2d 962 (Ill. App. 1983), and *Bob's Ready to Wear*, *supra*). Once those three elements were proven, *Carroll* likewise proceeded with a review of the five *Bob's Ready to Wear* factors to determine the intentions of the parties. [6]

---

[6] Hays argues that one only need satisfy the first step in order to establish a quasi-easement by implication. Hays cites to one published case, *Cole*, *supra*, to support this argument. However, *Cole* does not support Hays' argument, as it laid out the factors from both steps and stopped after the first step, finding no quasi-easement existed because the alleged easement was seldom used, not maintained, and in poor condition. Thus, if the first-step elements are not met, only then may one terminate the analysis.

Though worded differently, there is no substantive difference between the first-step elements in *Bob's Ready to Wear* and *Carroll*. The latter contains a third element or prerequisite – that the use was highly convenient and beneficial to the land conveyed. That element was derived from our Court's reliance on *Evanik*, but that element is not in discord with *Bob's Ready to Wear* or our Commonwealth's jurisprudence on quasi-easements. That element is a portion of one of the five factors in the second step, and its inclusion as a pre-requisite or threshold finding in the two-step analysis serves a valuable purpose of weeding out meritless claims. Accordingly, it is a distinction without a difference to use either the two prerequisites or the three elements in the first step of the analysis.

Once those prerequisites or elements are proven, though, the Trial Court must then analyze the parties' intentions under the factors of *Bob's Ready to Wear*. Indeed, the intent of the parties is critical to the analysis, as a quasi-easement "derives solely from the implied intent of the parties[.]" *Carroll*, 59 S.W.3d at 490-91. That intention must be analyzed from the fixed point in time of when the ownership was severed. "Because a quasi-easement involves the intentions of the parties, the date the unity of ownership ceases by severance is the point of reference in ascertaining whether an easement has been imposed upon adjoining land." *Id.* at 490 (footnote omitted). Courts should cautiously find implied easements, as "[e]asements are not favored and the party claiming the right

-20-

to an easement bears the burden of establishing all the requirements for recognizing the easement." *Id.* at 489-90 (footnote omitted).

With this two-part test in mind, we now turn to Case's claim of error. Case argues that the Trial Court erroneously concluded that a quasi-easement existed because it did not fully conduct the second step of the two-step analysis. Case requests that we vacate and remand the case for the Trial Court to review all five factors of the second step. Hays responds with multiple arguments. First, Hays notes that Case does not contest that the evidence was insufficient to establish the first step of the analysis. Second, Hays argues that because Case did not move the Trial Court pursuant to CR 52.04 for findings regarding the second step of the analysis, and because Case's brief does not contain a preservation statement, Case has not preserved his argument and has waived the same. Finally, Hays notes that even had the Trial Court conducted the second step of the analysis, it would have nonetheless reached the same conclusion.

As it relates to Hays' argument that Case is not contesting the first step of the analysis, we agree. Case's argument only relates to the second step of the analysis. Thus, we are not reviewing whether Hays met her burden of proof on the first step of the analysis.

As it relates to Hays' argument that Case has not complied with the procedural requirements for appellate review of this issue, we hold that any

-21-

deficiencies were not fatal to appellate review. While Case's brief does not contain a preservation statement, it does cite to the judgment, and his argument is that the judgment is devoid of the second step of the analysis. We do not condone failures to comply with our briefing rules, but we nonetheless have the discretion to ignore any deficiency and proceed with review. *Ford v. Commonwealth*, 628 S.W.3d 147, 154 (Ky. 2021). *See also Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). Here, the brief contains ample citations to the record and case law, and because the argument concerns a missing analysis, it would be challenging indeed to cite to where in the judgment something is not. We may in other circumstances hold differently, but in this case we elect to analyze the underlying issue.

Likewise, we do not find any CR 52.04 error. CR 52.04 "requires a party to object to the lack of a finding of fact . . . [if] the court fails to include an essential fact that would make a judgment complete." *Anderson v. Johnson*, 350 S.W.3d 453, 458 (Ky. 2011) (emphasis omitted). As shown above, the Trial Court made extensive factual findings. Case's argument relates not to the factual findings, nor to a missing essential fact that would make the judgment complete, but, rather, to the legal conclusions derived from those factual findings. We review those legal conclusions *de novo* on appeal. Indeed, in *Knight v. Shell*, 313 Ky. 852, 233 S.W.2d 973 (1950), which adopted the five factors, the Court did not

remand for the Trial Court to make additional findings to resolve the issue; it simply reviewed those factors. We thus proceed with our *de novo* review using the appropriate legal test.

Under the second step of the quasi-easement analysis, we analyze five factors to determine whether the parties intended an easement to be created when the severance occurred. Accordingly, the date of severance is important. Here, Mother severed the land when she created the minor subdivision plat and conveyed Tract 2 to Case. The land was further severed months later as the Will devised Tract 3 to Hays. Finally, the land was completely severed when Hays purchased Tract 1. With these timeframes in mind, we analyze the five factors.

The first factor is whether the claimant is the grantor or grantee of the dominant tract. This factor is significant because courts are more lenient toward grantees, as grantors have more control over the language that is included in their deeds of conveyance. *Carroll*, 59 S.W.3d at 490. In the instant case, the claimant, Hays, is not the grantor, but she is not similarly situated to many grantees because when she elected to purchase Tract 1, she knew that the recorded, minor subdivision plat only showed an express easement from Tract 1 to Tract 3 near US 127. She also knew or should reasonably have known that there was no express, written easement across Tract 2 for the farm road. Furthermore, she knew that her Mother's Will would only give her an easement across Tract 2 for purposes of

accessing Tract 1, not Tract 3. Thus, while Hays was a devisee or grantee of Tracts 1 and 3, she became such only after the die had already been cast about Tract 2 with no express easement relating to the farm road in any document. Accordingly, this factor weighs against finding that a quasi-easement exists for the farm road.

The second factor is the extent of necessity of the easement to the claimant. Necessity in this sense is reasonable necessity, not strict necessity, but it does mean "more than merely convenient to the dominant owner, but less than a total inability to enjoy the property absent the use." *Carroll*, 59 S.W.3d at 490. The Trial Court found this factor weighed in favor of finding a quasi-easement exists. We hold that this factor weighs both for and against granting a quasi-easement.

Weighing against granting a quasi-easement is the fact that Mother's Will devised Tract 3 to Hays because it adjoined the real property Hays already owned, thus providing Hays with access to Tract 3. Furthermore, the minor subdivision plat permitted 50 feet of roadway frontage in front of US 127 for Tract 3, in addition to providing an 80-foot-wide access easement across Tract 2 near US 127. The minor subdivision plat also connected the aforementioned easement to an access easement from Tract 1 to Tract 2 near US 127. Accordingly, when Hays

purchased Tract 1, she already had access to Tract 3 by three means: her property; US 127; and an access easement across Tract 2.

Weighing in favor of granting a quasi-easement is the substantial evidence presented that the existence of floodplain and a "year-round" stream on the 80-foot access easement rendered access from Tract 1 to Tract 3 challenging if not impossible at certain times. Additionally, Hays presented substantial evidence that constructing a vehicular crossing would be challenging if not impossible over the express access easement. Furthermore, she presented substantial evidence that it would be challenging and potentially dangerous to take farm implements on US 127 if such path was necessary to take to get between Tracts 1 and 3. Accordingly, none of the evidence established that there was a total inability to use the property without the farm road, and while some of the evidence showed that the farm road was simply a convenient access, other evidence showed the opposite. Thus, the necessity element weighs both for and against finding a quasi-easement exists for the farm road.

The third factor is whether reciprocal benefits accrue to both the grantor and grantee. This factor weighs heavily against finding a quasi-easement exists for the farm road. As was noted in *Knight* in analyzing this factor, "Where the grantor makes simultaneous conveyances, the inference is strong that the grantor intends that privileges of use shall exist among the various grantees[.]"

313 Ky. 852, 233 S.W.2d at 856. Here, there were no simultaneous conveyances. First, Mother conveyed Tract 2 to Case, referencing a minor plat that shows separate easements for Tract 3 and Tract 1 across Tract 2 and providing access to US 127 for each tract. Months later, Mother passed, and her Will devised Tract 3 to Hays, providing her with two means of access to Tract 3 – through her existing real property and through the easement along US 127 in the aforementioned minor plat. Hays chose to purchase Tract 1, obtaining per her Mother's Will an access easement across Tract 2. As each conveyance or devise occurred separately and provided means of access, it does not appear that Mother intended reciprocal benefits. Moreover, any reciprocal benefits did not accrue simultaneously for all three tracts.

The reciprocal benefits analysis also looks toward potential future development and the effects a quasi-easement might have on it. In *Bob's Ready to Wear*, which involved access to a business from a parking lot, the immediate reciprocal benefits were palpable and substantial and served to "enhance[] the purchase price paid" and "attract customers to the parking lot thereby enhancing the value of that property." 569 S.W.2d at 719. That reciprocal benefit was not prospective, though, as imposition of a quasi-easement "would be an extremely heavy burden impeding any future development of this valuable city property." *Id.* at 719-20. In the instant case, the farm road ostensibly bisects Tract 2. The benefit

-26-

appears to be solely for Tracts 1 and 3 and could significantly burden future development of Tract 2. Accordingly, the reciprocal benefits analysis weighs against granting a quasi-easement for the farm road.

The fourth factor analyzes the manner in which the land was used prior to the conveyance. This factor alone weighs heavily in favor of granting a quasi-easement for the farm road. Hays presented ample testimony, and the Trial Court likewise found that the farm road had been used to cross the property for many years. Moreover, the Trial Court found that for almost a year after the conveyance and after Mother passed away, the farm road was used on Tract 2. We have reviewed the trial and note that these factual findings are supported by substantial evidence; thus, we do not disturb them on appeal even though there was contrary evidence presented.

The fifth factor is whether the prior use was or might have been known to the parties. Hays and her witnesses presented ample testimony that the use was known. Case testified that there was not one specific path, but he did admit that he knew that the area in what is now Tract 2 was frequently crossed to access Tracts 1 and 3. As the Trial Court found, Case testified that "Tract 2 was traversed in whatever direction one wished to go and that there was not a designated pathway. Richard acknowledged that there was a creek crossing at the location identified by Plaintiffs as being on the farm road but indicated that the

particular crossing was not the only unimproved creek crossing." Accordingly, this factor weighs somewhat in favor of finding that a quasi-easement exists.

Thus, the five factors weigh both against and in favor of finding a quasi-easement. While the Trial Court emphasized the finding of prior use, that is neither the only, nor the pre-eminent factor. Ultimately, this case turns on necessity, the "most important" factor, *Cole*, 59 S.W.3d at 477, along with intention and reciprocal benefits. The necessity element only looks at reasonable necessity, not strict necessity. Nonetheless, even a finding that a portion of the land becomes "virtually useless" and results in the grantee suffering future monetary damages is not in and of itself sufficient to find a quasi-easement, especially where there are other means of access. *See, e.g.*, *Bob's Ready To Wear*, 569 S.W.2d at 719-20.

Here the land is far from useless. The evidence showed multiple points of access to both Tracts 1 and 3. The Trial Court made such factual findings, and those are supported by substantial evidence. Likewise, the Trial Court noted that though there was some work that had to be done to create more accessible crossings in the existing easements, there was testimony that Hays owns "a bulldozer which could perform work to remove trees and create a crossing across the creek[.]" *Cf. Knight*, 313 Ky. 852, 233 S.W.2d 973 (finding no necessity when the cost for constructing a new road was substantially less than the

value of the real property). While there may be some challenges in moving farm equipment between the two tracts, there still exists some reasonable access without the farm road. And Hays has ample ability to create more access without imposing the significant burden she wishes to place on Case and Tract 2 with her suggested, one-sided solution.

Furthermore, any reasonable necessity is wholly negated by the intention and reciprocal benefits factors. The evidence is unrefuted that Mother clearly did not intend to have the farm road become an access easement, and that she could have done so easily had she so wished. To the contrary, Mother's Will devised Tract 3 to Hays, with access to Tract 3 from Hays' pre-existing property. Further, Mother's express intention in the minor subdivision plat and grant to Case was to convey Tract 2 with access for Tract 3 to US 127 and an access easement for Tract 1 across Tract 2. That access easement could later provide access for Tracts 3 and 1 across Tract 2 using the 80-foot express access easement, should Hays ultimately purchase Tract 1. The intention is plain – the farm road is not the intended access easement for Tracts 1 and 3.

Likewise, bisecting Tract 2 with an access easement undercuts the reciprocal benefits factor. An access easement along the farm road is a substantial present and future burden on Tract 2. Accordingly, the factors weigh heavily against granting a quasi-easement for the farm road. The Trial Court's conclusion

to the contrary must be vacated and remanded for entry of a judgment in conformity with this Opinion.

## CONCLUSION

We reiterate that "[e]asements are not favored and the party claiming the right to an easement bears the burden of establishing all the requirements for recognizing the easement." *Carroll*, 59 S.W.3d at 489-90 (footnote omitted). In the instant case, Hays did not wholly establish each of the five factors in the second step. Moreover, given Mother's expressed intentions did not include access via the farm road, and the law favors *not* granting easements, we hold that the Trial Court erred by concluding a quasi-easement existed. Accordingly, we vacate and remand for entry of a judgment in conformity with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANTS:

David M. Ward
Winchester, Kentucky

BRIEF FOR APPELLEES:

Stewart C. Burch
Frankfort, Kentucky

William L. Patrick
Lawrenceburg, Kentucky